MARK E. FERRARIO
Nevada Bar No. 1625
JASON K. HICKS
Nevada Bar No. 13149
**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada  89135
Telephone:  (702) 792-3773
Fax:            (702) 792-9002
Email:  ferrariom@gtlaw.com
            hicksja@gtlaw.com

*Attorneys for Dana Dorado*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SANDRA M. MEZA-PEREZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SBARRO LLC dba SBARRO PIZZA, a foreign limited liability company; SBARRO, INC. dba SBARRO PIZZA, a foreign corporation; ZACHARY CEBALLES, an individual; EFRAIN HERNANDEZ, an individual; JESUS ALATORRE, an individual; DANA DORADO, an individual,<br><br>Defendants. | Case No.:  2:19-cv-373-APG-NJK<br><br>**MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11 BY DANA DORADO**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendant Dana Dorado, by and through her undersigned counsel, the law firm of Greenberg Traurig, LLP, submits this motion for sanctions pursuant to Fed. R. Civ. P. 11 ("Motion"). This Motion is made and based upon the following memorandum of points and authorities, the pleadings and papers on file herein, the exhibits attached thereto, and any oral argument to be entertained by the Court.

/ / /

/ / /

/ / /

/ / /

*ACTIVE 46081246v2*

### MEMORANDUM OF POINTS AND AUTHORITIES

The Court should impose sanctions upon Plaintiff and her counsel under Fed. R. Civ. P. 11(b) and (c) for filing and maintaining a baseless lawsuit against defendant Dana Dorado. By initiating this action, which at its core is a rape lawsuit with extraordinarily serious, indeed criminal, allegations, Plaintiff's counsel represented that they conducted a "reasonable inquiry" pre-suit and that Plaintiff's claims and factual contentions against Ms. Dorado "have evidentiary support," or otherwise that it is likely those claims and contentions would have evidentiary support "after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). However, it is clear after briefing on Ms. Dorado's Motion to Dismiss and through initial document exchanges that Plaintiff has no evidentiary support for her claims against Ms. Dorado and she never will. Instead, the evidence shows Plaintiff's allegations against Ms. Dorado are simply false. This information has been in Plaintiff's possession at all times, and her counsel knew, or should have discovered the same, had they conducted a reasonable inquiry before suing Ms. Dorado. *Schutts v. Bently Nevada Corp.*, 966 F. Supp. 1549, 1562 (D. Nev. 1997) ("[t]he issue is . . . whether a reasonable attorney, having conducted an objectively reasonable inquiry into the facts and law, would have concluded that the offending paper was well-founded"); *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994) (the test if objective and, "Counsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head"). They did not, and they still refuse to dismiss Plaintiff's claims after being confronted, thus warranting the imposition of sanctions.

**I.    INTRODUCTION**

Plaintiff is a former Sbarro employee who alleges that she was repeatedly sexually assaulted by her co-workers, co-defendants Hernandez, Ceballes, and Alatorre, while she was employed by Sbarro Pizza in Las Vegas from April 13, 2016 to May 2017. *See* First Amended Complaint, ECF No. 7 at ¶¶ 1, 18. Ms. Dorado is Sbarro's Human Resource Field Director and resides in Colorado. *Id.* at ¶ 23. Plaintiff has sued Ms. Dorado based upon her demonstrably false contention that Ms. Dorado knew Plaintiff was being subjected to sexual assault, rape, and the like by her co-workers during Plaintiff's employment, but purposefully did nothing about it and instead *conspired* with these co-defendants. These false accusations serve as the basis for Plaintiff's equally unsustainable legal

theory that Ms. Dorado individually owed Plaintiff a legal duty to protect Plaintiff from her co-workers but failed to satisfy that duty when Ms. Dorado "refused" to investigate Plaintiff's complaints.[1]

None of that is true and Plaintiff and her counsel have known as much at all times. Plaintiff states she began being assaulted in May or June 2016. *Id*. at ¶ 50. Plaintiff alleges she complained about her reduced hours and theft at the store on March 9, 2017, nearly a year into her alleged abuse, but still admits she did not tell Ms. Dorado about the sexual assault at that time. *Id*. at ¶ 57, 60. Plaintiff filed a complaint with NERC first raising abuse the following month on April 17, 2017. *Id*. at ¶ 6. She then made a reference to sexual assault to Ms. Dorado *for the first time* on April 18, 2017, the day after she went to NERC. ECF No. 64 at 8:3-5 (stating in her Opposition to Ms. Dorado's Motion to Dismiss that she notified Ms. Dorado of "serious workplace violations" on March 9, 2017 (i.e. the theft and hours) and again on April 18, 2017 (the assault)). Plaintiff stopped showing up to work shortly after filing her NERC charge. April 18, 2017 is the last date on which Plaintiff stated to NERC she was discriminated against. *See* Exhibit 4 to First Amended Complaint, ECF No. 7-4 (updated NERC charge signed by Plaintiff on June 29, 2017, which is months after she quit). Thus, the facts show that Ms. Dorado did not know about the alleged assaults until long after Plaintiff says they occurred and right before Plaintiff quit, and as such Ms. Dorado could not have conspired with her co-defendants or otherwise "allowed" the alleged abuse to occur over the preceding year.

Plaintiff's claim that Ms. Dorado refused to investigate either of her complaints in March or April 2017 is also false. Ms. Dorado has already provided two e-mails she sent to Plaintiff while still employed via the e-mail account Plaintiff has admitted is hers. The first is dated March 10, 2017, and is in response to the vague allegation of theft and complaint concerning her reduced hours Plaintiff alleges she made the day prior (March 9, 2017). *See* Exhibit A attached hereto (Dana Dorado's Initial Disclosures); *see also* First Amended Complaint, ECF No. 7 at ¶ 57 ("On March 9, 2017, Sandra complained to HR and because Ceballes reduced her hours and as a result her income."). Again, and critically, Plaintiff admits that she *did not* inform Ms. Dorado about the alleged sexual assault at that time (March 9, 2017). ECF No. 7 at ¶ 57-60 ("Sandra did not initially tell HR about the rapes, sexual

---

[1] Ms. Dorado has moved to dismiss Plaintiffs' claims which are incurably deficient even if Plaintiff's allegations were taken as true. ECF No. 23.

Page **3** of **11**

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
(702) 792-3773
(702) 792-9002 (fax)

assaults, degrading language used to speak about her, or the inhumane working conditions . . ."). Regardless, Ms. Dorado immediately responded to Plaintiff and attempted to investigate her unparticularized claim of theft and her complaint of reduced hours. *See* Exhibit A at DORADO_000001.

The second e-mail was sent by Ms. Dorado to Plaintiff the following month on April 18, 2017. *See id*. This e-mail was in response to a voicemail Plaintiff left *that same day* in which Plaintiff vaguely referenced, for the very first time, sexual harassment and retaliation, though she did not provide any details such as names or dates. *See* ECF No. 64 at 8:3-5 (Stating in her Opposition to Ms. Dorado's Motion to Dismiss that her Complaint is sufficient because "it asserts that Ms. Dorado was first notified of serious workplace violations on March 9, 2017 [theft and hours] and then again on April 18, 2017" [sexual harassment, retaliation, and hours]). In that April 18th e-mail, Ms. Dorado told Plaintiff that "we take these concerns very seriously and would like to conduct an investigation," requested information from Plaintiff to do so, asked Plaintiff to be "as detailed as possible," and invited Plaintiff to contact her further. *See* Exhibit A at DORADO_000001. Yet again, Plaintiff did not respond to Ms. Dorado. Instead, she quit shortly thereafter, though she admits in her updated NERC charge that no adverse actions were taken against her in the short two-and-a-half-week period between her first notifying Ms. Dorado of the alleged harassment and her job abandonment. *See* Exhibit 4 to First Amended Complaint, ECF No. 7-4. And we now know that Plaintiff had already filed her complaint with NERC by the time she states she first notified Ms. Dorado, in which she falsely stated that she had already reported her claims to management but that management did nothing. *See* Exhibit 2 to First Amended Complaint, ECF No. 7-2 (stating "I filed my complaint of discrimination with the Nevada Equal Rights Commission on April 17, 2017" and later falsely stating "I have complained internally to management and the Respondent has failed to address my complaints . . .").

Plaintiff's allegations against Ms. Dorado that she (1) knew of, and permitted, the assaults to occur; and (2) did not attempt to investigate are simply false. The timeline of events and Plaintiff's own admission that she did not report any of the underlying allegations of assault to Ms. Dorado until the eve of her job abandonment means it was impossible for Ms. Dorado to have conspired with the

ACTIVE 46081246v2

other individual co-defendants to "allow" those assaults to occur over the prior year. They also show that Ms. Dorado was not made aware of these alleged assaults until well after they occurred.

In spite of this, Plaintiff has doubled down on her allegations against Ms. Dorado, falsely asserting in her Opposition to Ms. Dorado's Motion to Dismiss that Ms. Dorado "***refused*** to investigate outrageous and criminal conduct" and so Ms. Dorado should be liable for her "unwillingness to put a stop to these egregious and inhumane conditions[.]" ECF No. 64 at 10:25-11:1 (emphasis in original). All of this information was in Plaintiff's and her counsel's possession long before she amended her complaint to add Ms. Dorado as a defendant given counsel's representation of Plaintiff in the months-long pre-suit NERC investigation, and long before Plaintiff recklessly accused Ms. Dorado in public filings of "tolerat[ing], allow[ing] and ultimately benefit[ting]" from "forced labor and sex slavery[.]" *See* Opp., ECF No. 64 at 2:11; 11:19-20.

It is clear that Plaintiff's counsel failed to conduct a reasonable investigation prior to slandering Ms. Dorado with these false and salacious allegations. Worse, Plaintiff has refused to withdraw her claims against Ms. Dorado after receiving notice of their falsity, with the benefit of this specific information highlighted for her, within the safe-harbor period. *See* Exhibit C (Letter from J. Hicks to M. Hill and H. Sull dated Oct. 8, 2019). Accordingly, sanctions under Fed. R. Civ. P. 11 are appropriate to compensate Ms. Dorado for the time spent thus far litigating this frivolous lawsuit and to deter like conduct in the future. *Schutts v. Bently Nev. Corp.*, 966 F. Supp. 1549, 1566 (D. Nev. 1997) ("The court must devise a form of sanction sufficient to help defray Defendant's litigation expenses and also to deter future conduct . . .").

**II.    ARGUMENT**

    **A.    <u>Legal Standard</u>**

Fed. R. Civ. P. 11 "is to be applied vigorously to 'curb widely acknowledged abuse from filing of frivolous pleadings.'" *In re Grantham Bros.*, 922 F.2d 1438, 1441 (9th Cir. 1991) (quoting *Zaldivar v. City of Los Angles*, 780 F.2d 823, 829-830 (9th Cir. 1986)). Accordingly, if a party or his counsel files a paper in violation of Rule 11, a court may "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated" the rule. *Id.* Appropriate sanctions may include an order directing payment to the moving party for some or all the reasonable attorneys' fees and other

ACTIVE 46081246v2

expenses incurred as a direct result of the Rule 11 violation. Fed. R. Civ. P. 11(c)(2). Additionally, Rule 11 authorizes non-monetary sanctions, such as the dismissal of a pleading. *Id.*

When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotations and citation omitted). As shorthand for this test, the word "frivolous" is used "to denote a filing that is both baseless and made without a reasonable and competent inquiry." *Holgate v. Baldwin*, 425 F.3d 671, 675-676 (9th Cir. 2005) (affirming imposition of sanctions against attorney for filing frivolous complaint) (quoting *Moore v. Keegan Mgmt. Co* (*In re Keegan Mgmt. Co.*, Sec. Litig.), 78 F.3d 431, 434 (9th Cir. 1996)).

To survive Rule 11 scrutiny, Plaintiff must demonstrate that it made a "reasonable and competent inquiry." In order to determine whether a party made a "reasonable inquiry," a court should consider that party's actions under the circumstances of the case. *Id*. at 1364 (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401-402, 110 S.Ct. 2447, 2459 (1990)). "The issue in determining whether to impose sanctions under Rule 11 is whether a reasonable attorney, having conducted an objective reasonable inquiry into the facts and law, would have concluded that the offending paper was well-founded." *In re Keegan Management Co., Sec. Litig.,* 78 F.3d 431, 434 (9th Cir. 1996)). Sanctions under Rule 11 must be imposed upon litigants and counsel who file baseless papers without first conducting a reasonable and competent inquiry. *Id.* at 1560. Sanctions are appropriate even where other portions of the pleading are nonfrivolous or otherwise do not violate Rule 11. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1367 (9th Cir. 1990).

**B.  The Claims Alleged by Plaintiff in her Complaint and Allegations Made by Her in Her Briefs Are Knowingly False**

Sanctions under Rule 11 are appropriate because Plaintiff and her counsel have initiated and knowingly maintained false claims against Ms. Dorado. These claims are directly contradicted by Plaintiff's own statements and the timeline of events set forth in the very documents she has relied upon in her briefing. Plaintiff's counsel had this information before they added Ms. Dorado to this

lawsuit because Plaintiff is the source, and they represented her for months in the NERC investigation before initiating these proceedings.

In particular, Plaintiff has falsely alleged in her First Amended Complaint that Plaintiff "did, in fact, report the sexual assaults to Sbarro Pizza's Human Resources Department" but that "Sbarro Pizza HR did nothing" and, instead, "the hostile work environment became even more hostile after [Plaintiff] complaint to Sbarro Pizza HR" until Plaintiff "could no longer take it and she quit Sbarro in disgust in or about May 2017." ECF No. 7 at 2:5-9. The following timeline, constructed from Plaintiff's own allegations and her submission to NERC, prove that Ms. Dorado was unaware of any claimed sexual assault until right before Plaintiff quit, and after they had ceased, thus she cannot have possibly "conspired" with her co-defendants to allow the repeated rapes. Second, the evidence shows Ms. Dorado *immediately* attempted to investigate Plaintiff's claim when notified. Ms. Dorado did not "stand by" and allow Plaintiff to be abused over the course of her employment, as is falsely stated.

The following are the most relevant dates and information as taken from the First Amended Complaint, exhibits attached thereto, Plaintiff's Opposition to Ms. Dorado's Motion to Dismiss and exhibits attached thereto, and two e-mails from Ms. Dorado to Plaintiff, all of which Plaintiff had before filing suit:

- Plaintiff began her employment with Sbarro on April 13, 2016 at the location in the Las Vegas Convention Center. First Amended Complaint, ECF No. 7 at ¶ 24. Ceballes was the General Manager and he hired and directly supervised Plaintiff. *Id*.

- Ceballes began raping Plaintiff "nearly one to two times a week." *Id*. at ¶ 27.

- On March 9, 2017 – approximately <u>9 months after she alleges she began being raped</u>, Plaintiff complained to Human Resources, but only because Ceballes reduced her hours, and Plaintiff informed HR that individuals were stealing from the store. *Id*. at ¶¶ 57-58.

- <u>Plaintiff admits she did not tell Human Resources about the alleged sexual assault at that time</u>. *Id*. at ¶ 60.

- Ms. Dorado made contact with Plaintiff to discuss her allegation of theft and her complaints as to her hours. *Id*. at ¶ 59. Ms. Dorado e-mailed Plaintiff the following day at "perez.sandra74@yahoo.com" which is her personal e-mail address. *See* Exhibit B, Plaintiff's Third Amended Answers to Defendant's First Set of Interrogatories to Plaintiff, Response to Interrogatory No. 15. Ms. Dorado wrote:

    Hi Sandra,

> Please find attached the accused statement form. Please be as detailed as possible using specific names, dates and witnesses. Please call me if you have any questions.
>
> Best Regards,
>
> Dana

*See* Exhibit A, attached hereto (Dana Dorado's Initial Disclosures) at DORADO_000001.

- Attached to Ms. Dorado's March 10, 2017 e-mail was Sbarro Pizza's Investigation Statement. *Id*. at DORADO_000002-3. That statement informed Plaintiff that "Sbarro takes complaints from its employees very seriously" and asked that Plaintiff describe in detail what happened, where it happened, when, and what she and others did. *Id*. Plaintiff did not return that form.

- Then in "Spring of 2017" (First Amended Complaint, ECF No. 7 at ¶ 66) Plaintiff alleges she complained for the first time about sexual assault. <u>Plaintiff has since admitted in her Opposition to Ms. Dorado's Motion to Dismiss that the precise date was April 18, 2017</u>. ECF No. 64 at 8:3-5.

- Yet, Plaintiff had already filed her complaint for discrimination with NERC on April 17, 2017, the day <u>before</u> she first mentioned anything to Ms. Dorado about sexual assault. *See* First Amended Complaint, ECF No. 7 at ¶ 6 ("Sandra timely filed her complaint of discrimination with NERC on April 17, 2017 . . .").

- The "latest date(s) discrimination took place" is listed by Plaintiff in her updated NERC charge as April 18, 2017 (*id*. at Exhibit 4), which is the date she first reported harassment to Ms. Dorado. Thus, she experienced nothing further after first reporting;

- On April 18, 2017 – the day <u>after</u> she filed her complaint with NERC and the <u>same day</u> Plaintiff admits she first reported sexual harassment to Ms. Dorado – Ms. Dorado followed up with Plaintiff via e-mail:

  > Good Afternoon,
  >
  > I received a message regarding your concern at work. As we have previously discussed we take these concerns very seriously and would like to conduct an investigation. The first step in the investigation process is for you to complete the attached statement form. Please be as detailed as possible with all of your concerns include Names [sic], dates, specifically what happened and list any witnesses.
  >
  > Please feel free to contact me if you have any questions.

*See* Exhibit A at DORADO_000001.

- Ms. Dorado again attached the investigative form so that Plaintiff could provide details. *Id*. Plaintiff did not return it and instead quit, proceeded with her already-filed NERC charge, and ultimately filed this lawsuit, specifically amending it to allege claims against Ms. Dorado and accusing Ms. Dorado in briefing of knowing about the assaults, allowing them to occur, and personally benefitting from them. ECF No. 64 (Plaintiff's Opposition to Ms. Dorado's Motion to Dismiss).

Page **8** of **11**

Rather than take an objective look at their own evidence, Plaintiff and her counsel have instead doubled down and have made additional inflammatory, false allegations at Ms. Dorado. For example, Plaintiff alleges that Ms. Dorado "stood by" while Plaintiff was "brutally and repeatedly raped and abused" and chastises Ms. Dorado, stating that Ms. Dorado's own actions, or lack thereof, "have placed her in the position she now finds herself in, as one of the Defendants of [sic] this lawsuit." ECF No. 64 at 2:8-10 (Plaintiff's Opposition to Ms. Dorado's Motion to Dismiss). Plaintiff has made every effort to inflame the facts and publicize her claims, going so far as to describe herself as an "indentured servant, under a new form of American sex slavery." *Id*. at 6:27.[2] Plaintiff has further alleged that "Ms. Dorado *refused* to investigate outrageous and criminal conduct" by the individual co-defendants, despite already having in her possession the aforementioned e-mails from Ms. Dorado asking for more information so she can conduct an investigation. *Id*. at 10:25-26 (emphasis in original). Plaintiff has further asserted that Ms. Dorado was "unwilling[] to put a stop to these egregious and inhumane conditions" and that she "allow[ed] this type of depraved behavior to continue." *Id*. at 10:28-11:2. Ms. Dorado is accused of "conspiring and working in concert" with her individual co-defendants to "allow[] these shocking behaviors by the co-Defendants to continue, under her watch and her notice[.]" *Id*. 11:15-18. Plaintiff alleges that this was "forced labor and sex slavery and [Ms. Dorado] tolerated, allowed and ultimately benefited from it." *Id*. at 11:19-20. Ms. Dorado allegedly "refus[ed] to do her job and put a stop to these actions[.]" *Id*. at 14:24. Plaintiff insists that "Ms. Dorado wishes to downgrade and minimize her involvement, as anyone would, in such a disgusting and horrific account of workplace rape, repeated sexual assaults by three perpetrators, and violence in the workplace[,]" (*id*. at 15:1-3) and that Ms. Dorado's "actions, or lack of, rise to extreme and outrageous conduct as a matter of law." ECF No. 64 at 16:19-20. Ms. Dorado supposedly refused to "stop the repeated workplace rape, repeated sexual assaults by three perpetrators, and violence in the workplace[,]" after Plaintiff misrepresents that she "reported the assaults to [Ms. Dorado]." *Id*. at 17:5-8.

---

[2] A protest against Defendants, including Ms. Dorado, was organized and took place outside the courthouse steps at the parties' Early Neutral Evaluation, for which Ms. Dorado was forced to travel from Colorado, where she resides, to attend.

Page **9** of **11**

ACTIVE 46081246v2

Every single one of these factual allegations is false, and Plaintiff's entire legal theory against Ms. Dorado is fabricated. Plaintiff knows this because she knows when she first informed Ms. Dorado of alleged sexual harassment, when she went to NERC, and when she quit. Plaintiff's counsel knows this because that information was within counsel's possession both through Plaintiff and through the NERC investigation. And, the two e-mails referenced in Ms. Dorado's initial disclosures, which simply prove what Plaintiff already knew but omitted, were obtainable from Plaintiff's own e-mail account. They were also provided to Plaintiff's counsel in discovery months ago, *before* Plaintiff made the majority of the aforementioned allegations against Ms. Dorado in her Opposition to the Motion to Dismiss.[3] And, both Plaintiff and her counsel have been specifically notified of the same via the undersigned's October 8, 2019 letter, to which a draft of this Motion was attached. The allegations made by Plaintiff and maintained by her counsel are reckless, false, and life-altering for Ms. Dorado. Plaintiff and her counsel simply do not care.

This conduct is sanctionable under Rule 11, which is aimed at addressing two separate problems: "first, the problem of frivolous filings; and second, the problem of misusing judicial procedures as a weapon for personal or economic harassment." *United States ex rel. Lawyers Title Ins. Corp. v. Mortgages, Inc.*, 1990 U.S. Dist. LEXIS 20939, *6-7 (D. Nev. Aug. 3, 1990) (quoting *Lemos v. Fencl*, 828 F.2d 616, 618 (9th Cir. 1987); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986)). A filing is frivolous under Rule 11 if it is unreasonable when viewed from the perspective of "a competent attorney admitted to practice before the district court." *Id*. (quoting *Zaldivar*, 780 F.2d at 830). "Rule 11 sanctions *shall* be assessed if the paper filed in district court and signed by an attorney or an unrepresented party is frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." *Id*. at 831 (emphasis added).

Plaintiff's allegations against Ms. Dorado are fabricated and Plaintiff's counsel – who handled the NERC investigation and so should be acutely aware of the facts – knew or would have known this had they conducted a reasonable inquiry. Plaintiff has instead chosen to ignore the impossibility of her claims, and she and her counsel have directed the anger Plaintiff holds for the other defendants

---

[3] Again, Plaintiff had the same counsel, Ms. Sull, representing her in the NERC proceedings, so counsel is or should have been intimately aware of these issues before amending the complaint to add Ms. Dorado and before lobbing incendiary, false allegations against Ms. Dorado in Plaintiff's Opposition to the Motion to Dismiss.

ACTIVE 46081246v2

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
(702) 792-3773
(702) 792-9002 (fax)

against Ms. Dorado, with no regard for the havoc it may wreak on Ms. Dorado's personal life. This is the type of conduct Rule 11 is intended to address, and Ms. Dorado respectfully requests that the Court impose sanctions against Plaintiff and her counsel for the foregoing reasons.

### III. CONCLUSION

Plaintiff's allegations against Ms. Dorado are fabricated and Plaintiff knew it. Her counsel should have known the same through even the most preliminary investigation because they had this information in their possession before filing a lawsuit. And both Plaintiff and her counsel should have immediately taken corrective measures and dismissed the claims against Ms. Dorado when specifically noticed. But they did not, and instead still insist on misdirecting their anger at Ms. Dorado while Ms. Dorado sits, wringing her hands, waiting to be exonerated of these frivolous allegations. The filing and pursuant of these claims by Plaintiff and both of her counsel are wholly unjustifiable and Ms. Dorado respectfully requests that the Court impose sanctions to compensate for the time and expense spent litigating this lawsuit, and to deter future similar conduct. *Schutts*, 966 F. Supp. at 1560 ("[U]nder Rule 11, a violation may warrant imposition of fees covering the entire course of the litigation if the complaint was filed in violation of the Rule.") (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 41 n.8, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991)).

DATED this 30th day of October 2019.

**GREENBERG TRAURIG, LLP**

 */s/Jason Hicks*
MARK E. FERRARIO (Nevada Bar No. 1625)
JASON K. HICKS (Nevada Bar No. 13149)
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
(702) 792-3773
(702) 792-9002 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of October 2019, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of filing will be served on all parties by operation of the Court's EM/ECF system, and parties may access this filing through the Court's CM/ECF system.

          /s/ Andrea Rosehill
          An employee of GREENBERG TAURIG

*ACTIVE 46081246v2*