# EXHIBIT "3"

NERC Investigative Report dated November 15, 2017

NERC Investigative Report dated November 15, 2017

# EXHIBIT "3"

TO: Sophia Long, Deputy Attorney General

FROM: Darrell K. Harris, Supervisory Compliance Investigator
Nevada Equal Rights Commission

Sandra Perez  NERC No. 0418-17-0176L
vs.  EEOC No. 34B-2017-00721C
Sbarro LLC dba Sbarro Pizza

Basis: GF and OR

Issues: Sexual Harassment (Quid Pro Quo) and Terms & Conditions

---

***Privileged Attorney/Client Communication***

## INVESTIGATIVE REPORT

Date of Filing of Charge: 04-17-2017
Date of Service of Charge: 04-18-2017
Date of ISM: 07-10-2017 (Waived)
Date Investigation Commenced: 05-16-2017
Date of Completed Investigation: 11-15-2017

---

### I. JURISDICTION:

The charges were timely filed in accordance with relevant federal and state statutes. NERC has jurisdiction over the charges and the Respondent did not challenge jurisdiction and/or timeliness.

### II. DISCRIMINATION STATEMENT:

#### AMENDED CHARGE

THIS CHARGE OF DISCRIMINATION IS BEING AMENDED TO CORRECTLY NAME THE RESPONDENT AS SBARRO LLC DBA SBARRO PIZZA.

The Respondent discriminates against me on the basis of sex (female). I am subjected to quid pro quo sexual harassment in the workplace and retaliation. I filed my complaint of discrimination with the Nevada Equal Rights Commission on April 17, 2017.

SBARRO000528

Sandra Perez vs Sbarro LLC dba Sbarro Pizza
NERC No. 0418-17-0176L
EEOC No. 34B-2017-00721C
Page 2 of 15

I began working for the Respondent as a Cook on April 13, 2016, and I am currently employed by the Respondent.

On or about July 15, 2016, Zachary Ceballes, Manager, took me into the cooler and told me because he gave all my family members jobs someone has to repay him for the favor. He started touching me, pulling and sucking my breast. He then began to have sex with me. I complied in fear of losing my job. For a year, Zachary has been taking me into the cooler and forcing me to have sex at least once a week. Zachary also made me have oral sex when I had my period. He would take a blue towel and a condom and take me into the cooler. Zachary has taken a beer bottle and has rammed it up my behind on at least two occasions.

Even when I am in the kitchen cooking, Efrain Hernandez, Cook, would take my hand and make me grab his penis. When I am at work Jesus Alatorre would grab me from behind and grind his genitals on me. In addition, Mr. Hernandez and Mr. Alatorre have chased me in the cooler to try and touch me against my will.

In December, 2016, I told Zachary that I did not want to have sex with him anymore because I was worried he was going to take advantage of my sister-in-law.

These men have been taking other female employees into the cooler to have sex with them. Some of these women ended up pregnant and having an abortion.

Zachary is currently paying one of the women he got pregnant, Anna Romero. Anna brings the baby to see Zachary and this is well known by all of my co-workers. This created animosity in the workplace amongst the female staff

I have complained internally to management and the Respondent has failed to address my complaints and is not paying me in retaliation because of my complaints.

I believe the Respondent's actions violate Title VII of the Civil Rights Act of 1964, as amended and Nevada State Law.

### III. RESPONDENT'S ARTICULATED DEFENSE (S):

The Respondent denies the Charging Party allegations of discrimination and/or that she was subjected to retaliation for complaining internally of a hostile work environment. The Respondent claims the Charging Party had impeded the company's internal investigation by refusing to cooperate and indicated her allegations are contradicted by direct and circumstantial evidence.

SBARRO000529

Sandra Perez vs Sbarro LLC dba Sbarro Pizza
NERC No. 0418-17-0176L
EEOC No. 34B-2017-00721C
Page 3 of 15

While at the company's Monte Carlo location, the Respondent states the Charging Party never complained internally to Human Resources about any sort of misconduct by Zachary Ceballes, Efrain Hernandez and Jesus Alatorre. They indicated Human Resources received a complaint from the Charging Party on March 9, 2017, that she was not getting enough hours after she was transferred to the company's Bally's location.

Field Human Resources Director Dana Dorado made contact with the Charging Party to discuss her concerns and acknowledges she informed Ms. Dorado there were problems at the Monte Carlo location. When asked to specify, the Charging Party informed Ms. Dorado employees were stealing, but the Charging Party never provide any further information nor did she inform Ms. Dorado that she was being subjected to sexual harassment by Mr. Ceballes, Mr. Hernandez and Mr. Alatorre.

After Ms. Dorado was informed of the Charging Party's concerns, Ms. Dorado promised to look into the Charging Party's complaint and sent her an investigative form to complete via her personal email account.

On or about April 18, 2017, the Charging Party left a voicemail on the company's general mailbox that she was not getting enough hours and that she was suffering retaliation for reporting unparticularized sexual harassment at the company's Monte Carlo location.

Due to the Charging Party's allegations of sexual harassment, Ms. Dorado sent the Charging Party a copy of an investigative form to complete. Ms. Dorado then contacted the Respondent's Director of Operations Larry Minister to follow up with the Charging Party face-to-face in the hope she would provide further specifics. Before Mr. Minister could follow up with the Charging Party, the company was notified of the Charging Party's Charge of Discrimination and the matter was referred to outside counsel.

The Respondent states they conducted an internal investigation despite the Charging Party's refusal to cooperate. All three individuals she named in her Charge of Discrimination denied the allegation because various employees frequently go back and forth between the front and back of the store to the back. Furthermore, the Respondent states witnesses interviewed denied witnessing the events the Charging Party alleged occurred in her Charge of Discrimination during the relevant time period.

Through further investigation, the Respondent claims they were informed the Charging Party was described as a "bad worker," that she made a false accusation that a company employee once kidnapped her and that she has been suspected to be under the influence of illegal drugs while at work.

SBARRO000530

Sandra Perez vs Sbarro LLC dba Sbarro Pizza
NERC No. 0418-17-0176L
EEOC No. 34B-2017-00721C
Page 4 of 15

> The Respondent reiterates the Charging Party has never been subjected to a hostile work environment and/or that she was subjected to retaliation for complaining internally of a hostile work environment. The Charging Party was given a reasonable number of hours. Other than a three week period from February 13, 2017, to March 15, 2017, when she worked no hours, since transferring to Bally's through April 26, 2017, she averaged approximately 29 hours per week. For the three weeks immediately proceeding April 26, 2017, the Charging Party worked 43.56 hours 36.2 hours and 28.28 hours.

### IV.   FINDINGS OF FACTS:

- The Respondent provided NERC a copy of the company's policies on discrimination in the workplace, attendance, performance management and employee conduct. The Respondent did not provide a copy with the Charging Party's signed acknowledgment (position statement, exhibit E and RFI, exhibit 2 through 4)

- The Respondent provided NERC a copy of the job description for the position of General Manager and Team Member. (RFI, exhibit 5 and 7)

- The Respondent provided NERC copies of pictures that showed the inside of their cooler at the Respondent's Monte Carlo location. This was confirmed in NERC's Site Visit at the Respondent's Monte Carlo location on September 11, 2017. NERC saw a hole in the inside of the door where a handle used to be to ensure that no one would be trapped inside the cooler (position statement, exhibit F through H)

- On January 11, 2017, the Respondent transferred the Charging Party from its Monte Carlo location to its Bally's location. (position statement, exhibit 7)

- The Respondent provided documentation showing the Charging Party contacted their Corporate Office on April 18, 2017. Documentation provided by the Respondent shows the Charging Party complained of retaliation for reporting sexual harassment and that she was not getting enough hours. This was also acknowledged in a signed affidavit by the Respondent's Field Human Resources Director Dana Dorado. (position statement, exhibit B and D)

- On May 7, 2017, the Charging Party was listed as voluntarily discharging her employment as job abandonment. (RFI, exhibit 1)

- The Respondent provided NERC a Punch List History of the Charging Party's hours April 13, 2016 through the date of her termination, May 7, 2017. Documentation shows the Charging Party's hours were never reduced and that her hours fluctuated during the relevant time period. (position statement, exhibit 6)

- On September 15, 2017, the Charging Party contacted NERC and provided a verbal statement (Spanish to English) in response to the Position Summary. The Charging Party informed NERC Mr. Ceballes introduced her into using methamphetamine and alcohol in order to have sex with him. She stated Mr. Ceballes would instruct staff not to enter the cooler. She then indicated Mr. Ceballes would snort a line of methamphetamine and then have sex with her. She stated this would happen once a week.

  Through further conversation, the Charging Party stated she had sex with Mr. Ceballes in order to keep her job because of her citizenship status, to ensure her family members remain employed because he hired all of them and to keep Mr. Ceballes from trying to have sex with her other family members. The Charging Party said, "I had fights with my co-workers because I was called a cheap whore. I never wanted to have sex with Mr. Ceballes, but if I did not do it, he fires me and my family. When I got fed up, my brother and brother-in-law went to the Monte Carlo. My sister told me Alexis choked Jesus and told him not to mess with me or my sister."

**Employee Table – Charging Party's Family Members:**

| Name | Job Location | Job Title |
|---|---|---|
| Fabiola Perez (sister) | Monte Carlo | Crewmember |
| Maribel Escoto (sister-in-law) | Monte Carlo | Crewmember |
| Diego Perez (brother) | non-employee | N/A |
| Alex Garcia (brother-in-law) | Bally's | Crewmember |
| Aida Isura, aka Aida Perez (neice) | Planet Hollywood | Crewmember |

**Alleged Discriminating Offenders:**

| Name | Job Location | Job Title |
|---|---|---|
| Jesus Alatorre | Monte Carlo | Crewmember |
| Efrain Hernandez | Monte Carlo | Crewmember |
| Zachary Ceballes | Monte Carlo | General Manager |

**Additional Witness(es):**

| Name | Job Location | Job Title |
|---|---|---|
| Alda Cadacio | Bally's | General Manager |

SBARRO000532

Sandra Perez vs Sbarro LLC dba Sbarro Pizza
NERC No. 0418-17-0176L
EEOC No. 34B-2017-00721C
Page 6 of 15

### Witness Interview(s):

- On May 2, 2017, telephone contact was made with witness Fabiola Perez. Mrs. Perez was informed of this investigation, NRS 233.190 and agreed to be interviewed. This witness informed NERC the Charging Party is her sister. Mrs. Perez said, "We started working at Sbarro at the same time. I was a Cook Prep and I worked for Sbarro Pizza at the Monte Carlo Hotel from May 2016 until March, 2017." This witness informed NERC the manager Zachary Ceballes was always flirting with female employees. She then said, "If a girl bends down to pick up something from the floor, he is right there to tell them how good their ass is or how pretty we are."

When questioned further, this witness stated a few months after she started working for the Respondent, Mr. Cebellas approached her and said, "Well you know what you have to do if you want to make more money." I knew what he was talking about because I saw him three times exiting the cooler with my sister Sandra. On one occasion, I needed to get some items from the cooler and he had my sister inside. The cooler door was locked from inside and I could not access the cooler. When my sister came out of the cooler and saw me, right away she put her head down. I also noticed she had some 'hickies' on her neck." When he came out of the cooler he said, "Girl you know what you have to do if you want to make more money." He then said, "I just had sex with your sister in the cooler if you want, you can be next."

Through further questioning, Mrs. Perez informed NERC on another occasion Mr. Ceballes gave the Charging Party some jello shots and took her to the cooler. She stated Mr. Ceballes then offered her some jello shots and told her if she wanted to be next because her sister already went through the list and now it was her turn.

This witness indicated Mr. Ceballes has a baby with one of the other girls and he re-located her to Bally's so his wife would not find out about the pregnancy. She then said, "I shared what was happening to my sister and with another female co-worker. I do not remember her name. I also told one of the managers. I don't remember his name either. This manager told me he couldn't do anything and that Zachary had been doing this for a long time." This witness also added when the Charging Party started talking about this with other people, Mr. Ceballes relocated the Charging Party to Bally's. She then added that sometimes Mr. Ceballes has a plastic bag that contained a crystal rock like substance, which this witness believed to be illegal drugs. It should be noted that Mrs. Perez's statements that the Charging Party was transferred from Monte Carlo to Bally's was confirmed by the ADO Zachary Ceballes in his interview with NERC on September 14, 2017. (see witness interview for Mr. Ceballes)

Sandra Perez vs Sbarro LLC dba Sbarro Pizza
NERC No. 0418-17-0176L
EEOC No. 34B-2017-00721C
Page 7 of 15

- On May 4, 2017, telephone contact was made with witness Maribel Escoto. Mrs. Escoto was informed of this investigation, NRS 233.190 and agreed to be interviewed. Mrs. Escoto informed NERC the Charging Party is her sister-in-law and stated she used to work for the Respondent in the mornings and evenings. She stated she left the company because of all the dirty things that were happening in the workplace. This witness said, "Zachary had a girl visiting him, Ana. He would then ask me if I needed anything from the cooler because he was going to use it with Ana. They were in there for quite a while."

  This witness indicated another employee, Jenny used to go into the cooler with Mr. Ceballes. This witness stated after she quit, the Charging Party shared with her husband (the Charging Party's brother Diego Perez) that Mr. Ceballes was having sex with her inside the cooler. This witness said, "Before I quit I saw Sandra go into the cooler with Zachary." This witness added this information was relayed to her husband. She then stated her husband went to the restaurant to confront Mr. Ceballes. However, she indicated security was instructed to kick her husband out. This witness also added that Mr. Ceballes used to make jello shots at the restaurant.

- On May 5, 2017, telephone contact was made with witness Diego Perez. Mr. Perez was informed of this investigation, NRS 233.190 and agreed to be interviewed. Mr. Perez stated he has never worked for the company. However, he informed NERC his wife Maribel Escoto did work for the Respondent and that his sister (the Charging Party) is still an employee for the company. Mr. Perez then said, "On one occasion I heard my wife and my sisters talking about some guy at work touching my sister. My wife told me all the dirty things were happening in that place and that she thought it was happening to my sister as well. On my day off, I went to look for that guy they told me about. I do not remember his name. When I arrived at the pizza place I asked a male employee that I needed to talk to the guy that was touching my sister and that I wanted to fix it right there. The man I was speaking to told me to leave because the guy wasn't there."

  Through further questioning, Mr. Perez informed NERC he told his wife he didn't want any problems and told her to quit the job because of all the suspicious and weird things were happening there. Mr. Perez said, "I heard this guy was having lovers coming to see him and the reason I told my wife to quit is because I didn't want that guy to ask her for something. I heard if they didn't please him, he would fire them."

- On September 11, 2017, NERC interviewed witness Jesus Alatorre at the Respondent's Bally's location. In attendance during this interview were the Respondent's attorneys David Axelrod and Malani Kotchka, and Field Human Resources Director Dana Dorado. Mr. Alatorre was informed of this investigation, NRS 233.190 and agreed to be interviewed.

Sandra Perez vs Sbarro LLC dba Sbarro Pizza
NERC No. 0418-17-0176L
EEOC No. 34B-2017-00721C
Page 8 of 15

Mr. Alatorre informed NERC he is currently a Crewmember with the Respondent and has been with the company since 2011. Mr. Alatorre denied the Charging Party's allegations that he subjected her to sexual harassment in the workplace. This witness said, "Sandra was constantly fighting with me and other employees. She always looked high and was acting nervous. Sandra told me she was doing crystal methamphetamine and marijuana and that the police was after her. Sandra one-time told me she was using marijuana because her husband sexually abused her daughter and had gone to therapy because of this."

Through further questioning, Mr. Alatorre said, "There was one-time I was speaking to Sandra's sister Fabiola Perez because I wanted to buy a cell phone from Fabiola. Fabiola told me to discuss this with her husband Alexis Garcia. The next day, Fabiola's husband comes to the food court area at the Monte Carlo, grabs me by the neck and tells me not to mess with his wife. I did not know what he was talking about because I just wanted to buy a phone. Security was there, however, I did not report this incident to management. After this incident, I asked Fabiola why did her husband choke me and she acted like she did not know what I was talking about. After this incident, I left Fabiola alone." This witness informed NERC the Charging Party's brother-in-law Alexis worked at Sbarro's at Bally's." It should be noted, the incident with Mr. Hernandez and Mr. Garcia was confirmed by witness Fabiola Perez when she was re-interviewed by NERC on September 14, 2017.

*Relevant Information about NERC's Interview with Mr. Alatorre - Mr. Alatorre informed NERC during his interview he knew how to report certain issues to management. Despite this information, Mr. Alatorre informed NERC during its Site Visit at the RSP's Bally's location with representatives for the RSP present that he never reported the incident with Mr. Garcia choking him at the Monte Carlo location to management. Mr. Alatorre's immediate supervisor is Mr. Ceballes. As such, it is unknown if any corrective was action was taken against Mr. Garcia who worked at the RSP's Bally's location. In addition, representatives for the RSP informed NERC during this interview they were aware of the incident with Mr. Alatorre and Mr. Garcia when they conducted their internal investigation. However, this was never mentioned in the RSP's Position Statement. Furthermore, a second witness Diego Perez (the CP's brother and a non-employee of the RSP) informed NERC when he was interviewed that he went to the RSP's place of business to confront the individual that was touching his sister (the CP). This SCI believes Mr. Alatorre's credibility is suspect for the reasons noted in this paragraph.*

- On September 11, 2017, NERC interviewed witness Efrain Hernandez at the Respondent's Bally's location. In attendance during this interview were the Respondent's attorneys David Axelrod and Malani Kotchka, and Field Human

Sandra Perez vs Sbarro LLC dba Sbarro Pizza
NERC No. 0418-17-0176L
EEOC No. 34B-2017-00721C
Page 9 of 15

Resources Director Dana Dorado. Mr. Hernandez was informed of this investigation, NRS 233.190 and agreed to be interviewed.

Mr. Hernandez informed NERC he is currently employed as a Crewmember at the Respondent's Monte Carlo location. He denied the Charging Party's allegations that he would make her grab his hand and penis. Mr. Hernandez said, "Sandra was always going back and forth with her co-workers. One minute she was happy, the next minute she was upset. I remember one-time the police showed up to work because Sandra was having a domestic situation at home. It was also known amongst staff that Sandra was always acting jittery. She told me she was running from the police because she had a meth pipe. She is a dishonest person. Zachary did not like dealing Sandra because she was always having problems."

- On September 11, 2017, NERC interviewed witness Alda Cadacio at the Respondent's Bally's location. In attendance during this interview were the Respondent's attorneys David Axelrod and Malani Kotchka, and Field Human Resources Director Dana Dorado. Ms. Cadacio was informed of this investigation, NRS 233.190 and agreed to be interviewed.

Ms. Cadacio informed NERC she was recently promoted to General Manager on July 3, 2017, by the Respondent and she acknowledged she can make personnel decisions. Ms. Cadacio said, "Working with Sandra was very tense because you never knew her mood swings. She could go from being aggressive to happy. I worked with Sandra's daughter Karla and she had the same attitude as her mother."

Through further questioning, this witness said, "I do not believe anything Sandra is saying because she was always tweaking on the job." Ms. Cadacio described Mr. Ceballes as very outgoing and a good guy. She then stated Mr. Ceballes used to sexually harass her all the time. Ms. Cadacio said, "Zachary would always tell me how sexy I am and how good I look. The last time this happened was three years ago. We were messing around and when he made that comment that I am sexy, I said, Fuck you!" This witness then stated she never reported this matter to management or Human Resources because they both were in management. Ms. Cadacio also stated her manager Sheldon Stern knew about the Charging Party coming to work high. However, Ms. Cadacio informed NERC she could not say for sure if the Charging Party was disciplined.

*Relevant Information about NERC's Interview with Ms. Cadacio - It should be noted Ms. Cadacio initially said Zachary would sexually harass her all the time. When NERC asked for further clarification, Ms. Cadacio looked at representatives for the Respondent and changed her story to say Ms. Ceballes was only joking and that the incident happened one-time. She also stated she never reported this matter internally to HR. In addition, NERC saw Ms.*

SBARRO000536

Sandra Perez vs Sbarro LLC dba Sbarro Pizza
NERC No. 0418-17-0176L
EEOC No. 34B-2017-00721C
Page 10 of 15

> *Cadacio look down after she made this statement, probably because she realized what she said in front of representatives for the Respondent. NERC then observed Ms. Dorado's facial expression change when Ms. Cadacio informed NERC and representatives for the RSP that Mr. Ceballes used to sexually harass her all the time. After this occurred, this witness started saying Ms. Perez was always under the influence of drugs. It appears to NERC Ms. Cadacio was subjected to a hostile work environment by Mr. Ceballes and that she probably changed her story when she realized what she said in front of representatives for the Respondent. NERC believes even though Ms. Cadacio indicated she did not believe the Charging Party's allegations, Ms. Cadacio acknowledged Mr. Ceballes sexually harassed her constantly and then changed her story during her interview. It is more than likely Mr. Ceballes subjected Ms. Perez and her family members to the same treatment. When Zachary Ceballes was interviewed and questioned during NERC's Site Visit with the Respondent present, Mr. Ceballes denied sexually harassing anybody he worked with for the Respondent including Ms. Cadacio. Based upon this witness interview and the witness interview with Ms. Cadacio, NERC believes the RSP's credibility is highly suspicious.*

- On September 11, 2017, NERC interviewed witness Zachary Ceballes at the Respondent's Bally's location. In attendance during this interview were the Respondent's attorneys David Axelrod and Malano Kotchka, and Field Human Resources Director Dana Dorado. Mr. Ceballes was informed of this investigation, NRS 233.190 and agreed to be interviewed.

  Mr. Ceballes informed NERC he is currently employed by the Respondent at their Monte Carlo location as the General Manager since July 3, 2007. This witness stated he has been with the company since 2007 and acknowledged he can make personnel decisions. ==Mr. Ceballes denied having sex with the Charging Party or anyone else in the workplace.== This witness said, "I hired Sandra and some of her family members. The problem is Sandra was always fighting amongst her family members (her daughter and sister-in-law) and other employees at work. This caused a lot of problems because whenever she had a problem, she expected me to fix it. I cannot fix personality problems in the workplace. I transferred Sandra to Bally's because she was constantly fighting amongst the other employees at the Monte Carlo store. After she was transferred, I heard she had the same problems over there."

  *Relevant Information about NERC's Interview with Mr. Ceballes – NERC asked Mr. Ceballes if he ever sexually harassed anybody at work. Mr. Ceballes denied sexually harassing anybody at work. When the RSP's attorney David Axelrod inquired about an incident with Ms. Cadacio or if he ever joked around inappropriately (this was based upon Ms. Cadacio's interview), Mr. Ceballes informed NERC and the representatives for the RSP he has never subjected*

Sandra Perez vs Sbarro LLC dba Sbarro Pizza
NERC No. 0418-17-0176L
EEOC No. 34B-2017-00721C
Page 11 of 15

> *anybody to sexual harassment. He indicated the only issues he had with Ms. Cadacio was that she wanted his position.*
>
> *Through further questioning, Mr. Ceballes stated a couple of employees told him the Charging Party had a pipe and would smoke in the bathroom. When NERC asked Mr. Ceballes if he ever talked to Ms. Perez about these allegations because he was aware of all her other problems, he said, "No." He then dropped his head and said, "I should have taken corrective action." These statements were made despite Mr. Ceballes informing NERC and representatives for the RSP he used to overlook Ms. Perez coming into work late because he was trying to help her. Based upon this witness interview and the witness interview with Ms. Cadacio, NERC believes Mr. Ceballes credibility is highly suspicious because he denied sexually harassing anyone at work.*

- On September 14, 2017, telephone contact was made with Fabiola Perez in regards to this case. Ms. Perez was informed of this investigation, NRS 233.190 and agreed to be re-interviewed through Spanish translation. Ms. Perez informed NERC that Jesus Hernandez would constantly grab her behind and use the terms "mamasita" and "cutie" towards her. This witness stated she did not like Mr. Hernandez touching her and/or calling her these names. She then indicated she told her husband Alex Garcia who worked at the Respondent's Bally's location. This witness stated her husband went to the Monte Carlo location to confront Mr. Hernandez.

- On October 26, 2017, telephone contact was made with witness Aida Isura (aka Aida Perez). Ms. Perez was informed of this investigation, NRS 233.190 and agreed to be interviewed. This witness informed NERC she is currently employed with the Respondent as a Crewmember at the company's Planet Hollywood location. This witness also stated she is the Charging Party's niece.

   Ms. Isura informed NERC that she was questioned about the Charging Party's allegations against Mr. Ceballes. She said, "A translator was present along with their attorney and Dana. I told them that my aunt told me she was being sexually assaulted in the cooler by Zachary. When questioned (twice) if she ever told the Respondent that her aunt (the Charging Party) and Mr. Ceballes were ever romantically involved, this witness said, "I told them that Sandra told me she was sexually assaulted by Zachary at work."

   Through further conversation, this witness said, "It is common knowledge/gossip that Zachary got a female employee Ana pregnant at the Monte Carlo, even though he has a wife and kids. He would take women into the cooler for sex. When he transferred to Bally's he tried but couldn't lock the doors like he did at the Monte Carlo. After making this comment, this witness then informed NERC that Mr. Ceballes was fired a couple of weeks ago for reasons unknown to her.

Sandra Perez vs Sbarro LLC dba Sbarro Pizza
NERC No. 0418-17-0176L
EEOC No. 34B-2017-00721C
Page 12 of 15

Ms. Isura wanted NERC to know that she believes her aunt is telling the truth about Mr. Ceballes because he tried to have sex with another female employee Elizabeth (Last Name Unknown). However, this witness indicated this employee rejected Mr. Ceballes' sexual advances.

*Relevant Information about NERC's Interview with Ms. Isura. Ms. Isura was asked twice by NERC if she ever told the RSP that her aunt and Zachary were romantically involved. However, Ms. Isura told NERC she never made this statement and reiterated she told the RSP that her aunt told her she was being sexually assaulted in the cooler by Mr. Ceballes. This statement contradicts the RSP's position statement on page 13 that Ms. Isura told the RSP her aunt (the CP) and Zacahry were romantically involved.*

- Attempts were made at contacting the Charging Party's other listed witness(es) during this investigation. These attempts at witness contact were unsuccessful.

V.   **RECOMMENDATION OF PROBABLE CAUSE:**

**QUID PRO QUO SEXUAL HARASSMENT:**
In order to establish a violation based on Quid Pro Quo Sexual Harassment, the evidence must show in the following order of proof:

1) Whether the Charging Party opposed the sexual harassment by a supervisor or manager;
   **Yes. The CP claims she engaged in an unwanted sexual relationship with Mr. Ceballes due to being undocumented and because he hired her family members. Later, the CP told Mr. Ceballes she no longer wanted to have sex with him. This is not an indicative of a consensual situation.**

2) Whether an adverse action was taken against the Charging Party subsequent to his/her objecting to sexual harassment;
   **Yes. On January 11, 2017, the RSP transferred the CP from its Monte Carlo location to its restaurant inside of Bally's. On May 7, 2017, the CP was listed as voluntarily discharging her employment as job abandonment.**

3) Whether there was a causal connection between the opposition or participation and the employment decision;
   **Yes. The ADO's for the RSP were interviewed and denied the CP's allegations of quid pro quo sexual harassment. However, witnesses provided information in support of the CP. Two of the CP's family members went to the RSP's Monte Carlo to location to confront the ADO(s) over accusations they were having sex with the CP, and requesting sex from her family members. After this incident occurred, the**

SBARRO000539

Sandra Perez vs Sbarro LLC dba Sbarro Pizza
NERC No. 0418-17-0176L
EEOC No. 34B-2017-00721C
Page 13 of 15

CP was transferred to the RSP's location at Bally's. It should be noted the RSP acknowledges at least one of the CP's family members (an employee at their Bally's location) went to the Monte Carlo to confront one of the ADOs and it is unknown if this employee was disciplined. It is possible if the CP's family members had not confronted one of the ADOs it is more than likely she would be still subjected to sexual harassment in the workplace.

4) Whether there was a legitimate non-discriminatory reason for the employment action,
No. The ADO's for the RSP were interviewed and denied the CP's allegations of quid pro quo sexual harassment. However, witnesses interviewed (former employees of the RSP) provided information in support of the CP's allegations. Due to the hostile work environment, the CP was transferred to the RSP's Bally's location when the ADOs at the RSP's Monte Carlo location were confronted by the CP's family members over accusations the ADOs were sexually harassing the CP and her family member. Mr. Ceballes is the individual who hired the CP and her family members and was the decision-maker in transferring the CP to the RSP's Bally's location. Eventually, this led to the CP discharging her employment at Bally's.

5) Whether the articulated reason was a pretext for quid pro quo retaliatory discrimination.
Yes. The ADOs for the RSP were interviewed and denied the CP's allegations of quid pro quo sexual harassment. However, witnesses interviewed supported the CP's allegations of sexual harassment. Mr. Ceballes denied having sex with or sexually harassing the CP, or any employee including sexually harassing anybody in the workplace. However, Ms. Cadacio stated Mr. Ceballes sexually harassed her (Ms. Cadacio) on many occasions, then changed her story to say it only happened one-time. This brings the RSP's credibility into question because when NERC interviewed Mr. Ceballes he denied having a sexual relationship with the CP and/or any employee and also denied sexually harassing staff. In addition, the RSP claimed in their position statement that the CP's niece (Ms. Isura) told their representatives during their internal investigation that the CP and Mr. Ceballes were romantically involved, but the relationship ended because another female employee came between them. However, Ms. Isura (the CP's niece) informed NERC during its neutral and independent investigation that "a translator was present along with their attorney and Dana. I told them that my aunt told me she was being sexually assaulted in the cooler by Zachary." When questioned (twice) if she ever told the RSP that her aunt (the CP) and Mr. Ceballes were ever romantically involved, this witness

Sandra Perez vs Sbarro LLC dba Sbarro Pizza
NERC No. 0418-17-0176L
EEOC No. 34B-2017-00721C
Page 14 of 15

said, "I told them that Sandra told me she was sexually assaulted by Zachary at work." This witness then stated it was common knowledge amongst staff that Mr. Ceballes would take women into the cooler for sex and that he impregnated a female employee at work. There is a probable cause finding for quid pro quo sexual harassment.

### VI. RECOMMENDATION OF NO PROBABLE CAUSE:

**RETALIATION**
In order to establish a violation based on Retaliation, the evidence must show in the following order of proof:

1) Charging Party opposed any practice made unlawful by state or federal equal opportunity laws, or participated in any manner in activity pursuant to those laws
Yes. The RSP's Director of Human Resources Dana Dorado provided NERC a signed and dated affidavit in regards to this investigation. Ms. Dorado stated on or about April 18, 2017, the Charging Party "claimed she was suffering retaliation for reporting sexual harassment at the Monte Carlo Sbarro's."

2) An adverse action[1] was taken against the Charging Party subsequent to his/her participating in a protected activity
No. On May 7, 2017, the CP was listed as voluntarily discharging her employment as job abandonment. Furthermore, the RSP provided NERC a Punch List History of the CP's hours April 13, 2016 through the date of her termination, May 7, 2017. Documentation shows the CP's hours were never reduced and that her hours fluctuated during the relevant time period.

3) The alleged decision maker knew or should have known of this opposition or participation
Yes. The RSP's Director of Human Resources Dana Dorado provided NERC a signed and dated affidavit in regards to this investigation. Ms. Dorado stated on or about April 18, 2017, the Charging Party "claimed she was suffering retaliation for reporting sexual harassment at the Monte Carlo Sbarro's.

4) There was a causal connection between the opposition or participation and the adverse action[2]
No. There is no evidence that shows the CP's internal complaint of discrimination was related to her being subjected to retaliation. Witnesses information supports the CP was subjected to quid pro quo sexual harassment. However, the RSP provided NERC a Punch List History of the CP's hours April

---

[1] Adverse action is any action, not necessarily restricted to an employment action, which would dissuade a reasonable worker from making or supporting a complaint of discrimination.
[2] The adverse action would not have occurred but for the Charging Party's participation in the protected activity.

SBARRO000541

Sandra Perez vs Sbarro LLC dba Sbarro Pizza
NERC No. 0418-17-0176L
EEOC No. 34B-2017-00721C
Page 15 of 15

13, 2016 through the date of her termination, May 7, 2017. Documentation shows the CP's hours were never reduced and that her hours fluctuated during the relevant time period. The CP was given a reasonable number of hours. Other than a three week period from February 13, 2017, to March 15, 2017, when she worked no hours, since transferring to Bally's through April 26, 2017, she averaged approximately 29 hours per week. For the three weeks immediately proceeding April 26, 2017, the CP worked 43.56 hours 36.2 hours and 28.28 hours.

5) Was there a legitimate non-discriminatory explanation for the adverse action, and if so, was the explanation in fact pretext for retaliation
No. There is no evidence that shows the CP's internal complaint of discrimination was related to her being subjected to retaliation. Witnesses information supports the CP was subjected to quid pro quo sexual harassment. However, the RSP provided NERC a Punch List History of the CP's hours April 13, 2016 through the date of her termination, May 7, 2017. Documentation shows the CP's hours were never reduced and that her hours fluctuated during the relevant time period. The CP was given a reasonable number of hours. Other than a three week period from February 13, 2017, to March 15, 2017, when she worked no hours, since transferring to Bally's through April 26, 2017, she averaged approximately 29 hours per week. For the three weeks immediately proceeding April 26, 2017, the CP worked 43.56 hours 36.2 hours and 28.28 hours. There is a no probable cause finding for retaliation.

There is a finding of Probable Cause for quid pro quo sexual harassment based upon gender (female) discrimination. There is a finding of No Probable Cause for terms & conditions based upon retaliation.

Submitted this 15th day of November 2017.

Darrell K. Harris
Supervisory Compliance Investigator