# EXHIBIT 1

## Excerpts of Defendant Ceballes' Deposition Transcript

# EXHIBIT 1

## Excerpts of Defendant Ceballes' Deposition Transcript

```
 1                    UNITED STATES DISTRICT COURT

 2                     CLARK COUNTY, NEVADA

 3

 4   SANDRA M. MEZA-PEREZ, an    )
     individual,                 )
 5                               )
                 Plaintiff,      )
 6                               )
                                 )
 7       vs.                     ) CASE NO.
                                 ) 2:19-cv-00373-APG-NJK
 8                               )
     SBARRO LLC dba SBARRO PIZZA, )
 9   a foreign limited liability )
     company, SBARRO, INC. Dba   )
10   SBARRA PIZZA, a foreign     )
     corporation, ZACHARY        )
11   CEBALLES, an individual,    )
     EFRAIN HERNANDEZ, an        )
12   individual, JESUS ALATORRE, )
     an individual,              )
13                               )
                                 )
14               Defendants.     )

15

16
             VIDEO DEPOSITION OF ZACHARY CEBALLES
17

18                 Taken at the Law Offices of
            Wolf, Rifkin, Shapiro, Schulman & Rabkin
19                 3556 East Russell Road
                         2nd Floor
20               Las Vegas, Nevada  89120

21

22               Wednesday, February 26, 2020
                         9:27 a.m.
23

24

25   Reported by:  Angela Campagna, CCR #495
```

Page 79

1          Q.    Okay.  And why was that?

2          A.    Because of marriage status.

3          Q.    The same reason?

4          A.    Yes.

5          Q.    All right.  Okay.  I'm about to ask you

6     a series of questions, and I want you to pause

7     before you answer because I expect your attorney and

8     I will have to what's called "make a record," okay?

9     So before you answer, pause.  And then I also would

10    admonish you that if you have any doubt about

11    whether or not to answer, say so and we'll take a

12    break, okay?  I want to give you and your attorney a

13    fair chance to talk to each other during the next

14    series of questions.  Okay?

15         A.    Okay.  Yes.

16         Q.    Now, other than Sandra Meza-Perez,

17    while you were the manager at Monte Carlo, did you

18    have a sexual relationship with any other employee?

19         MR. CHAPIN:  John, I'm going to object.  Lacks

20    foundation.  Form of the question.  More

21    importantly, it is an invasion of privacy of my

22    client, as well as the privacy of other employees

23    potentially.  So far the record only reflects that

24    the plaintiff who is suing my client for battery,

25    false imprisonment, assault, intentional infliction

ZACHARY CEBALLES - 02/26/2020

1   of emotional distress, negligent infliction of

2   emotional distress, of course which is interference

3   with employment relationship.  Those are the claims

4   brought by Ms. Perez against Mr. Ceballes.  She's

5   the only one that has testified to provide evidence

6   of having a sexual relationship, unconsensual or

7   otherwise, with Mr. Ceballes.  The question you're

8   asking is not reasonably calculated to lead to

9   discovery of admissible evidence.  More importantly,

10  not just his privacy, but the privacy of potential

11  parties.  I'm going to instruct him not to answer

12  the question.

13      MR. SAMBERG:  Okay.  Let me give you an offer

14  of proof.  Okay.  This is what I was talking about

15  when the lawyers talk to each other.  And everything

16  going on here is appropriate, lawyers are doing

17  their job to do this.

18                  The employment environment, the

19  context, the quality of the employment environment,

20  conduct of employees, whether there was an ongoing

21  pattern of conduct, all of these things are part of

22  the jury instructions that pertain to how to

23  interpret conduct as between the two participants in

24  this particular lawsuit.  So with all due respect, I

25  disagree.  I think it's discoverable and I think

ZACHARY CEBALLES - 02/26/2020

Page 81

1    it's germane.  And it's particularly called for as

2    something to consider as part of the jury

3    instructions for these claims.

4                    More importantly, I believe there

5    has been testimony from others that there was at

6    least one relationship that resulted in the birth of

7    a child.  So there has been testimony about other

8    activity that would bear on the work environment.

9    So that would be my offer of proof that it does --

10   you know, I don't know if it's still the standard,

11   but for a long time it was -- I believe it's

12   reasonably calculated to lead to the discovery of

13   admissible evidence.  And I think that it's

14   particularly so because of the way the jury

15   instructions are written.

16                    So that would be my offer of

17   proof.  And I think that since it doesn't call for

18   attorney/client privilege, the instruction not to

19   answer isn't appropriate.  And --

20        MR. CHAPIN:  Go ahead.

21        MR. SAMBERG:  I'm not done.  So what I would

22   offer would be to stipulate that he be allowed to

23   answer these questions and we agree that we reserve

24   these objections for future motion practice as to

25   whether or not it would ever be presented to a jury

Page 82

1   if this case ever goes to trial.  And I think that

2   I'm entitled to ask, and I think the instruction is

3   particularly appropriate with my offer to keep it

4   confidential until a judge has a chance to rule on

5   it.

6           MR. CHAPIN:  I appreciate your offer, and let

7   me follow up and respond to that.  Regarding the

8   testimony or what evidence has been offered about

9   hearsay or innuendo or rumor regarding my client and

10  potentially third parties, those names that were

11  mentioned so far on the testimony received, those

12  particular -- that name or names has not testified

13  or offered that.  So their privacy is of grave

14  concern to us.  Because in the event my client would

15  say something on the record, he could be subjecting

16  himself to litigation or civil action for invading

17  their privacy, especially if something is not true,

18  it was based on innuendo.  That is the strongest

19  argument I'm making to instruct him not to answer

20  the question.  It is private information.  I think

21  there is a sphere of protection there that is

22  included in the privilege instruction to him not to

23  answer that.  That's my argument.

24                  Also, under the Rule 30(d)(3)

25  motions which you can -- instead of terminating the

ZACHARY CEBALLES - 02/26/2020

Page 83

1   deposition, which you can do, make that argument,

2   make the motion, I'm not going to do that.  But, you

3   know, that Rule 30(d)(3) motion I have regardless if

4   you make the offer or not.  So that's not always

5   something that I would be able to file anyway, or

6   even a motion in limine can be forthcoming

7   regardless if he answered or not and I didn't make

8   the objection.  So that's really nothing that I

9   don't have available to me anyway.

10                   With that, I still am sticking

11  with -- I'm still instructing him not to answer the

12  question based on the reasons I've given.  And more

13  importantly, there has been no third party that's

14  been implicated to actually say under oath that they

15  had a relationship with my client in the workplace

16  outside of the workplace before we get to whether or

17  not a child was born out of a relationship.  That's

18  only been through hearsay and innuendo.

19        MR. SAMBERG:  Let me expand on my offer of

20  proof.  I believe names have been mentioned.  So

21  here's --

22        MR. CHAPIN:  They have, but not by the person

23  who's been named.

24        MR. SAMBERG:  No.  I heard you.  So let me

25  propose something.  What I propose is that we

Page 84
```
 1   reserve all of these rights to come back if we need
 2   to reopen this, but I would like to ask yes or no
 3   questions without mentioning names.  That way
 4   privacy is preserved, no names are mentioned, and it
 5   allows me to at least lay a foundation for whatever
 6   law in motion practice would flow from this.
 7         MR. CHAPIN:  With that, without mentioning
 8   names and reserving those objections, which some --
 9   we don't have to reserve them, I have them anyway.
10         MR. SAMBERG:  I know.
11         MR. CHAPIN:  You understand that?
12         MR. SAMBERG:  Yeah.
13         MR. CHAPIN:  I will -- and not saying I'm
14   waiving any of my objections --
15         MR. SAMBERG:  I know.
16         MR. CHAPIN:  -- to form, foundation, I'll
17   allow regarding anonymous questions or no names
18   being mentioned.
19         MR. SAMBERG:  Correct.
20         MR. CHAPIN:  That's fine.
21         MR. SAMBERG:  Got it.  Okay.  And thank you
22   for that accommodation.  And I agree --
23         MR. CHAPIN:  And my objections are not waived
24   or -- anything the rules allow me under Rule 30 I
25   have regardless, I'm not waiving those.
```

ZACHARY CEBALLES - 02/26/2020

Page 85

1        MR. SAMBERG:  They are sacrosanct.  They shall

2   remain unassailed by me or anybody on my team that

3   you've allowed -- by allowing these questions you're

4   giving up any of this stuff.  Everybody has said

5   what they're going to say, and thank you for letting

6   me proceed with this.

7        MR. CHAPIN:  But we're limiting that to

8   potential employees of Sbarro and even time -- not

9   outside of employees.

10        MR. SAMBERG:  Correct.  Correct.  I understand

11   this whole thing terms on the work environment, not

12   extracurricular activity.

13        MR. CHAPIN:  I'm not agreeing that that's what

14   it terms on.  You're making that argument, I'm not

15   agreeing to that.  That's -- we can -- that's why we

16   have a lawsuit, to some part and parcel, that we're

17   disagreeing with.  But that's okay.

18                  Do you understand that, that it's

19   yes or no?  No names mentioned; right?

20        THE WITNESS:  Yes.

21        MR. SAMBERG:  Okay.  And again, this whole

22   diatribe is appropriate.  What your lawyer and I are

23   doing is -- we have to do this to protect our

24   respective clients and the rights of others.

25        MR. HICKS:  Just so that I'm clear, the

ZACHARY CEBALLES - 02/26/2020

Page 86

1   question is did Mr. Ceballes have consensual

2   relations with any other employee of Sbarro?

3        MR. SAMBERG:  No.  I'm not going to use the

4   word "consent" or any form of the word "consent" at

5   all.  That's not what I'm going to ask.  What I'm

6   going to ask is yes or no -- let me just ask the

7   question.

8   BY MR. SAMBERG:

9        Q.   And pause before you answer, because

10  obviously this is a sensitive issue.  So pause,

11  don't answer, and then there may be more lawyer

12  talk.  Don't mention names.  Is that clear to you,

13  Mr. Ceballes?  No names, okay?

14       A.   Yes.

15       Q.   All right.  Now, while you were a

16  manager at Sbarro location at Monte Carlo, other

17  than Sandra did you ever have sexual relations,

18  either sexual intercourse, oral sex, anything sexual

19  in nature, in addition to Sandra, with other Sbarro

20  employees who were working at that same location

21  while you were the manager there?  It's a yes or no

22  question.

23       MR. CHAPIN:  I'm going to make the same

24  objection.  For the record, based on foundation,

25  form of the question.

ZACHARY CEBALLES - 02/26/2020

Page 87

```
 1                    And with that, you can answer.
 2   With those objections.
 3   BY MR. SAMBERG:
 4          Q.   Yeah.   Yes or no, no names?
 5          A.   Yes.
 6          Q.   Now, same thing, no names.  Yes or no
 7   only.  To your knowledge, have any of the person or
 8   persons -- I'm not going to get into how many, but
 9   any of the person or persons that you've had sexual
10   relations with other than Sandra, to your knowledge
11   was a child ever born from those sexual relations?
12          MR. CHAPIN:  Objection.  Form of the question.
13   Lacks foundation.  Invades the privacy of my client
14   and potential other third parties or party.
15                    You can answer.
16   BY MR. SAMBERG:
17          Q.   Yes or no only.
18          A.   No.
19          Q.   Okay.  Now, by the way, once again I
20   want to thank you for the way we resolved that.
21   Thank you.  So we're all reserving our rights.  We
22   may or may not come back on this, but I'm going to
23   move on at this point, okay?
24                    Now, pause, continue to pause,
25   because these are all questions that are sensitive
```