# EXHIBIT "11"

## Sbarro's July 18, 2017 Position Letter to NERC

# EXHIBIT "11"

## Sbarro's July 18, 2017 Position Letter to NERC



# SHUMAKER.
Shumaker, Loop & Kendrick, LLP

Huntington Center        614.463.9441
41 South High Street      614.463.1108 fax
Suite 2400
Columbus, Ohio 43215-6104

www.slk-law.com

DAVID F. AXELROD
614.628.4427
daxelrod@slk-law.com

July 18, 2017

VIA EMAIL AND FEDEX

Ms. Kara Jenkins
Administrator
Nevada Equal Rights Commission
1820 E. Sahara Avenue #314
Las Vegas, NV 89104
k-jenkins@nvdetr.org

Re:    Complaint by Sandra Perez
       NERC Charge Number 0418-17-0176L
       EEOC Charge Number 34B-2017-00721

Dear Ms. Jenkins:

As you know, we represent Sbarro, LLC ("Sbarro" or the "Company") in connection with this Charge of Discrimination (the "Charge") filed by Sandra Perez ("Perez"). We respectfully submit this position statement to assist in your evaluation of the Charge.

As described below, Perez has: impeded our investigation by refusing to be interviewed or otherwise cooperate; told irreconcilable stories about her relationship with the chief accused employee; refused to divulge details of her repeated, broad and unparticularized accusations of misconduct; falsely accused others of misconduct; failed in conversations reporting complaints to Sbarro's Human Resources Director even to mention the instant allegations; and otherwise engaged in bizarre, disruptive, erratic and dishonest behavior. Her allegations are also contradicted by direct and circumstantial evidence, including the near impossibility of events occurring as described. For these and the additional reasons described below, we are confident



EXHIBIT 16
WIT: Hokris
DATE: 11/18/19
All-American Court Reporters

SBARRO000251

Ms. Kara Jenkins
July 18, 2017
Page 2

that you will agree that Perez is unworthy of belief, there is no merit to the Charge and you should find no probable cause to believe that an unlawful discriminatory practice, or any other unlawful behavior has occurred.

I.    INTRODUCTION

On or about April 20, 2017, your office notified Sbarro that Perez had filed the Charge wherein she claims to have been sexually assaulted at her place of employment by three Sbarro employees, Zachary Ceballes, Efrain Hernandez and Jesus Alatorre.  At the time of the alleged incidents, all were employed at the Sbarro store at the Monte Carlo casino, but as explained below, Perez had been transferred to the Sbarro located in the Bally's casino before filing the Charge.  Thus, by letter dated April 27, 2017 (copy attached as Exhibit A), we assured you that Perez would have no further contact with any of the three alleged assailants during the course of her employment.  We then undertook an internal investigation of Perez's allegations, including reviewing relevant employment records, conducting a site visit to examine the location of the alleged assaults and interviewing numerous employees, including the following:

| Name | Title | Store Location |
|---|---|---|
| Jesus Alatorre[1] | Crew | Monte Carlo |
| Zachary Ceballes | General Manager | Monte Carlo |
| Elvia Cruz | Crew | Monte Carlo |
| George Garcia | Crew | Monte Carlo |
| Efrain Hernandez | Crew | Monte Carlo |
| Osvaldo Luna | Crew | Monte Carlo |
| Nancy Teran | Crew | Monte Carlo |
| George Torres | Crew | Monte Carlo |
| Alda Cadacio | Crew | Bally's |

---

[1]  A certified Spanish language interpreter was present for all of the interviews and available to assist, as needed.

Ms. Kara Jenkins
July 18, 2017
Page 3

| Aida Perez | Crew (also niece of the charging party) | Bally's |
| Amber Poole | Crew | Bally's |
| Susana Reyes | Crew | Bally's |
| Sheldon Stern | General Manager | Bally's |

The description below results from that investigation.

## II.  THE ALLEGATIONS

Perez was formerly employed as a team member at the Sbarro's location in the Monte Carlo casino, and was later transferred to the Bally's location. The gist of her charge is that the Monte Carlo store general manager Zachary Ceballes sexually assaulted her at least weekly in the walk-in cooler in the back of the Monte Carlo location. Although the language in the Charge is imprecise, Perez apparently claims that the assaults included forced sexual intercourse and oral sex, and sexually assaulting her with a beer bottle by "ramm[ing] it up her behind on at least two occasions." CHARGE OF DISCRIMINATION at 1-2. She also claims that a cook named Efrain Hernandez would force her to place her hand on his penis, and that another team member, Jesus Alatorre, would "grind his genitals" on her. *Id.* at 2. Both allegedly chased her into the cooler where they tried to touch her against her will. *Id.*

Perez also claims that Ceballes, Hernandez and Alatorre have taken other, unnamed female employees into the cooler to have sex with them and that some became pregnant and had abortions. She also claims that Ceballes is currently paying one of the women whom he got pregnant, Anna Romero, who brings the baby to the Monte Carlo location and "this is well known by all of [her] co-workers." *Id.* Finally, Perez claims that she has complained to management, which has failed to address her complaints, and that the Company is not paying her in retaliation for her complaints. *Id.*

SBARRO000253

Ms. Kara Jenkins
July 18, 2017
Page 4

III.   PEREZ IMPEDED OUR INVESTIGATION BY REFUSING TO BE INTERVIEWED

Notably, we have been unable to speak with Perez because -- incredibly -- her attorney notified us that he viewed our investigation as a "continuation of the [alleged] harassment" and she therefore declined to be interviewed.  He promised to follow up with us in a few weeks after performing his own due diligence, but we have heard nothing in the intervening eight weeks and do not know whether he still represents her.

Perez's refusal to talk with us or otherwise participate in this investigation has placed obvious limitations on our ability to perform follow-up investigation and analysis on many aspects of her Charge.  For instance, we have been unable to question Perez about (without limitation) the following basic aspects of her claims:

- The specific acts to which she intended to refer by saying that Ceballes "ha[d] sex" with her;

- The dates and times of day when the alleged assaults occurred;

- Other details of the individual incidents, such as whether she was forced to remove her clothing, whether birth control was used and whether she reported the alleged assaults to law enforcement authorities;

- To what law enforcement agencies she has reported the alleged assaults;

- Whether she suffered physical injury and sought medical attention as a result of the alleged assaults -- especially the alleged assaults with a beer bottle -- and if so, from whom;

- Whether Perez screamed or otherwise resisted the alleged assaults, including the alleged assaults with a beer bottle;

SBARRO000254

Ms. Kara Jenkins
July 18, 2017
Page 5

- Whether and how the alleged assailants prevented others from interrupting them in the cooler during the alleged assaults;

- Whether the alleged assaults occurred at locations other than the Monte Carlo store's walk-in cooler;

- The lengths of time involved in the individual alleged assaults;

- Who else was present in the back area of the store when the assaults allegedly occurred;

- The identities of supporting witnesses;

- Details concerning her allegation that Hernandez forced her hand on his penis (*e.g.*, where this occurred, whether this was through his clothes and who else was present);

- Details concerning her allegation that Alatorre would grab her from behind and grind his genitals on her (*e.g.*, where this occurred and who else was present);

- To whom she intended to refer by saying that "these men" forced "other women" to have sex with them in the cooler;

- Dates, times and frequency of the alleged assaults by "these men;"

- The identities of the other women;

- Which of the other women allegedly "ended up pregnant;"

- To whom in management she allegedly complained, and precisely about what;

- If Perez did not complain about the alleged sexual assaults, why not;

- Whether she is in fact undocumented, and if so, where and how she obtained the green card and social security number used in connection with her employment application;[2]

---

[2] In a telephone call preceding our investigation, you advised us that Perez claims to have been susceptible to threats by Ceballes because she is undocumented.

SBARRO000255

Ms. Kara Jenkins
July 18, 2017
Page 6

- Information about Anna Romero, including when and at which Sbarro location(s) she was allegedly employed, and her contact information;

- Whether Perez told anyone about the alleged sexual assaults before filing the Charge, and if so, what she disclosed and to whom; and

- The particulars of her allegations about thefts and other unspecified problems at the Monte Carlo store, including which employees were allegedly stealing, what they were stealing and the specifics of the other problems.

Despite Perez's lack of cooperation, we have conducted a thorough investigation on the core allegations that appear in the Charge, and as shown below, their falsity is confirmed by her co-workers and exposed by both direct and circumstantial evidence.

IV.   BACKGROUND AND CHRONOLOGY

Perez was hired to work as a team member at the Monte Carlo Sbarro in early April, 2016, at least partly because she reportedly had experience working in another quick service restaurant. She provided a green card and social security number, both of which reasonably appeared to relate to her and were shown by a routine background check to be valid.[3] Perez did not at any time suggest that she is undocumented. AFFIDAVIT OF DANA DORADO, sworn to July 11, 2017, ¶ 2. A copy of the DORADO AFFIDAVIT ("DORADO AFF.") is attached as Exhibit B.

Ceballes was a manager at the Monte Carlo store with whom Perez worked regularly. She also worked there with Hernandez and Alatorre. Hernandez is a pizza maker, and works in the front of the store. Alatorre is a cashier and server. On or about January 11, 2017, at the

---

[3] A more in-depth background check in connection with this investigation suggests that Perez may in fact be undocumented.

SBARRO000256

Ms. Kara Jenkins
July 18, 2017
Page 7

Bally's store manager's request, Perez was transferred to the Bally's Sbarro to help fill a need for additional employees. DORADO AFF. ¶ 3.

While still at the Monte Carlo location, Perez did not complain to the Company's Human Resources department about any sort of misconduct by Ceballes, Hernandez, Alatorre or any other employee. Nor did she complain to her manager, Ceballes, about Hernandez or Alatorre. *See id.* However, on March 9, 2017, after her transfer to the Bally's store, Perez contacted Human Resources Director, Dana Dorado, to complain that she was not getting enough hours to support her family. She explained that the manager of the Bally's store, Sheldon Stern, had told her not to come in that day because based on projected sales, she was unneeded. *Id.* ¶ 4.

During her March 9, 2017 call, Perez also complained – for the first time – that there were "a lot of problems at Monte Carlo." Perez rebuffed Dorado's effort at obtaining specifics, but repeated that there were "a lot of problems." She subsequently claimed that employees were stealing at the Monte Carlo store, but again refused to provide specifics. She said nothing about sexual assault, sexual harassment, Ceballes, Hernandez or Alatorre. *Id.* ¶ 5.

Dorado promised to look into Perez's hours and also asked for a statement concerning details of the alleged thefts. Perez agreed to provide a statement and gave Dorado her email address. Dorado subsequently sent Perez an investigation form to complete, *Id.* ¶ 6, of which a copy is attached as Exhibit C.

On March 16, 2017, Perez called Dorado to complain that her general manager, Sheldon Stern, had become upset at her for leaving her shift early to deal with a family problem, which she thought was unfair because the matter was beyond her control. Perez subsequently changed her story, however, and stated that she had to leave for a doctor's appointment because she was

SBARRO000257

Ms. Kara Jenkins
July 18, 2017
Page 8

pregnant. Again, she said nothing about sexual assault, sexual harassment, Ceballes, Hernandez or Alatorre. DORADO AFF. ¶ 7.

Dorado encouraged Perez to talk with Stern and assured her that he would be understanding of a true emergency. Dorado also asked about the investigation form and advised Perez that Sbarro was ready to start an investigation as soon as it had the information. Perez told Dorado that she hadn't yet gotten to the form. *Id.* ¶ 8.

Approximately one month later, on April 18, 2017, Perez left a voicemail on the general Company mailbox, of which a transcription is attached as Exhibit D. Her complaints in this message were mostly focused on not receiving a satisfactory number of hours and overtime. Despite her failure to fill out the investigation form, never having said anything in her calls with Dorado and refusing to provide details regarding her complaints, Perez also claimed that she was suffering retaliation for reporting unparticularized sexual harassment at the Monte Carlo location (although she did not disclose to whom she had made such reports). She also complained of being treated differently from others and said that she was going to get a lawyer. She did not, however, mention sexual assault, Ceballes, Hernandez or Alatorre. *Id.* ¶ 9.[4]

Dorado again sent a copy of the investigation form to Perez, explained that the Company had received her call and again asked for specifics. Dorado also called Larry Minister, the Company's Director of Operations for the area, and asked him to follow up with Perez face-to-face in the hope that she would provide specifics, including about her allegations of sexual harassment and retaliation. Before Minister could follow up, Sbarro was notified of the instant Charge, and the matter was referred to outside counsel. *Id.* ¶ 10.

---

[4] Perez also mentioned that no one did anything about her complaints of sexual harassment. She did not say to whom she complained (referring only to "these people"), but in any case, none of her co-workers recalled complaints of sexual harassment.

SBARRO000258

Ms. Kara Jenkins
July 18, 2017
Page 9

V.   SBARRO ANTI-HARASSMENT POLICY

The Company has established policies and procedures for dealing with issues such as those raised by Perez's claims. Sbarro's Anti-Harassment policy provides in part:

<u>Policy</u>

Sbarro policy is that all employees have a fundamental right to work in an environment free from any form of harassment. Sbarro will not tolerate any conduct that interferes with an individuals' work performance or that creates a hostile, intimidating or offensive working environment.

\*\*\*

<u>Open Door Policy</u>

Any employee who believes they have personally experienced or witnessed any violation of this policy, including any type of discrimination or harassment should utilize the Company Open Door Policy to report the concern or complaint. Employees should not wait to make their concerns known. It is considered a job requirement to make the company aware of any concerns.

\*\*\*

<u>No Retaliation</u>

Retaliation against any employee who makes a complaint of harassment is prohibited.

A copy of Sbarro's Anti-Harassment Policy is attached as Exhibit E.

VI.   PRACTICAL IMPOSSIBILITY FOR THE ASSAULTS TO HAVE OCCURRED AS CLAIMED

The Bally's and Monte Carlo locations both consist of two areas: the front, where the cash register is located and customers are served, and a crowded space in the back where ingredients and supplies are kept and "prep" work is performed. The walk-in cooler, where the assaults allegedly occurred, is located in the back. Photographs of the back area of the Monte Carlo location are attached as Exhibit F; a photograph of the interior of the walk-in cooler at that location is attached as Exhibit G.

SBARRO000259

Ms. Kara Jenkins
July 18, 2017
Page 10

At the Monte Carlo location, where the assaults allegedly occurred, Perez worked primarily in the back room, operating the steamer. Employees reported that there were at least two employees in the back at all times; other estimates were as many as three to four people. Employees frequently go back and forth between the areas throughout the day. None of the employees interviewed observed anything resembling the claimed misconduct.

There has never been a time when the cooler door could be locked or latched from the inside to exclude others from entering. There was previously a lock on the outside of the door, but it has been broken and inoperable for a substantial period, estimated by one employee to be a year-and-a-half (pre-dating Perez's employment). Employees constantly go in and out of the cooler throughout the day and night, and there is no time at which one can count on being alone in the cooler. Several co-workers stated explicitly that it would be impossible to count on being alone in the cooler for long enough to have sex. An obvious corollary is that it would be impossible for the assaults to have occurred as described without other employees being aware of them.

VII.   CEBALLES, HERNANDEZ AND ALATORRE DENY THE ALLEGATIONS

We have interviewed the three alleged assailants identified by Perez concerning her allegations, and all vehemently deny them. Additionally, they noted the near impossibility of anyone engaging in sexual activity in the walk-in cooler, since there were multiple people present in the back of the store at all times, frequently and unpredictably going in and out of the cooler. It is impossible to count on privacy in the cooler for any period of time, as confirmed by multiple employees.

Perez apparently has repeated her claims about Ceballes, Hernandez and Alatorre to other co-workers. Bally's crew member Susana Reyes stated that everyone has heard those stories.

SBARRO000260

Ms. Kara Jenkins
July 18, 2017
Page 18

XI.   PEREZ DID NOT REPORT HER ALLEGATIONS TO THE HR DIRECTOR BEFORE FILING
      HER CHARGE

Sbarro exercised reasonable care to prevent and correct promptly any sexually harassing behavior. *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 763-65 (1998). Perez unreasonably failed to take advantage of any preventive or corrective opportunities provided by Sbarro or to avoid harm. *Id.* at 765. She spoke to Sbarro's Human Resources Director on multiple occasions but failed to tell her of the allegations in her Charge. Perez suffered no tangible employment action such as discharge or demotion or undesirable reassignment inflicted by Ceballes. *See Montero v. AGCO Corp.,* 192 F.3d 856, 861 (9th Cir. 1999). Therefore, there is no probable cause to believe that an unlawful discriminatory practice has occurred.

XII.   CONCLUSION

The facts speak for themselves: direct and circumstantial evidence -- much of which consists of Perez's own conduct -- demonstrate the falsity of the Charge and that you should find no probable cause to believe that an unlawful discriminatory practice has occurred.

Very truly yours,

David R. Axelrod

Malani L. Kotchka
Hejmanowski & McCrea LLC
520 South Fourth Street, Suite 320
Las Vegas, Nevada 89101
702.834.8777
mlk@hmlawlv.com
*Co-counsel for Sbarro LLC*

Cc:   Mark Inzetta
      Rohan Shearer
      Dana Dorado

SBARRO000268