# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

SANDRA M. MEZA-PEREZ,

    Plaintiff

v.

SBARRO LLC, et al.,

    Defendants

Case No.: 2:19-cv-00373-APG-EJY

**Order**

[ECF Nos. 433-440]

Plaintiff Sandra M. Meza-Perez filed numerous post-trial motions for judgment as a matter of law, a new trial, relief from judgment, and sanctions. ECF Nos. 434-440.  Defendants Sbarro LLC and Sbarro, Inc. filed one motion for judgment as a matter of law. ECF No. 433. Defendant Zachary Ceballes did not file any post-trial motions, but he joins Sbarro's responses to Meza-Perez's motions.

The parties are familiar with the facts, so I repeat them here only as necessary to resolve the motions.  I deny all post-trial motions.

## I.  LEGAL STANDARDS

### A.  Renewed Motions for Judgment as a Matter of Law

During trial, Sbarro and Meza-Perez moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). ECF No. 419 at 18-21.  Under, Rule 50(b), "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."  I did not grant the Rule 50(a) motions, instead submitting the case to the jury. ECF Nos. 417 at 10-11; 419 at 21.

Rule 50(b) provides that in this circumstance, a party may "file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." "Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "In ruling on the renewed motion," I "may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

**B.  Motion for New Trial**

Rule 59(a)(1)(A) provides that following a jury verdict, I may grant a new trial "for any reason for which a new trial has heretofore been granted in actions at law in federal court." I may grant a new trial if the verdict is "contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quotation omitted).

**C.  Motion for Reconsideration**

Under Rule 60(b), I may "relieve a party" from a final judgment for any of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

/ / / /

## II.  MEZA-PEREZ'S MOTIONS

### A.  Motion for Reconsideration (ECF No. 434)

In this motion, Meza-Perez once again challenges my ruling on summary judgment that her claim for negligent hiring, retention, and supervision was untimely.  As an initial matter, Meza-Perez's motion does not identify under what portion of Rule 60(b) she seeks relief.  Regardless, I have already explained why reconsideration is unwarranted. *See* ECF Nos. 242; 345 at 31-34.  In response to Sbarro's summary judgment motion, Meza-Perez did not argue that any of her claims were timely.  Rather, she argued only that equitable estoppel tolled the limitation period. ECF No. 161 at 17-20.  I found no equitable tolling as to Sbarro and I decline, once again, to reconsider that decision. *See* ECF No. 181 at 3-10.  I therefore deny this motion.

### B.  Motion for New Trial (ECF No. 435)

Meza-Perez moves for a new trial under Rule 59(a) on eight grounds.  She contends that I made evidentiary errors at trial by: (1) failing to exclude questions under Federal Rule of Evidence (FRE) 412; (2) admitting Meza-Perez's immigration file and an audio clip from an immigration hearing; and (3) excluding her life care expert.  She also contends that I erred by (4) denying her motion for a mistrial after Sbarro's counsel made comments in opening statements that suggested Meza-Perez's counsel engaged in immigration fraud and (5) denying a spoliation instruction.  And she asserts that (6) the defendants violated my order that precluded them from mentioning that her counsel had been sanctioned in this case, (7) I abused my discretion by limiting the parties to 10 days of trial and cutting short her rebuttal case, and (8) the verdict was against the weight of the evidence.

/ / / /

/ / / /

1         1.  Evidentiary Issues

2    I have "broad discretion in admitting evidence." *Ruvalcaba v. City of L.A.*, 64 F.3d 1323,

3    1328 (9th Cir. 1995).  Consequently, a "new trial is only warranted when an erroneous

4    evidentiary ruling substantially prejudiced a party." *Id.* (quotation omitted).  Erroneous

5    evidentiary rulings are presumptively prejudicial, but the "presumption can be rebutted by a

6    showing that it is more probable than not that the jury would have reached the same verdict even

7    if the evidence had been admitted" or excluded. *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir.

8    2005).

9         *a.  Rule 412*

10   Meza-Perez argues that certain questions I allowed during cross-examination of her

11   should have been precluded under FRE 412.  She asserts that the defendants did not file a notice

12   of intent to introduce the evidence as required under the Rule, that she did not open the door to

13   the questions, that it was not inextricably intertwined with the issues in the case, and that the

14   unfair prejudice outweighed the probative value.

15   Sbarro responds that Rule 412 does not apply because the challenged testimony was not

16   offered to prove that she engaged in other sexual behavior or to prove her sexual predisposition.

17   Rather, Sbarro contends that it was offered to show what Meza-Perez told Ceballes, to explain

18   his perception of their interactions.  Alternatively, Sbarro argues that even if the Rule applies,

19   Meza-Perez placed the information about her husband sexually abusing her into evidence, so she

20   cannot then be immune from questioning about it.  Finally, Sbarro contends that had it filed a

21   Rule 412 motion and the court held a hearing, the evidence would have been admissible because

22   it was probative and intertwined with the facts of the case.

23   / / / /

4

Under FRE 412(a), "(1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition" is generally inadmissible in a civil case "involving alleged sexual misconduct."  However, in a civil case, "the court may admit evidence offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." FRE 412(b)(2).  Additionally, evidence of a victim's reputation may be admitted "only if the victim has placed it in controversy." *Id.*

"If a party intends to offer evidence under Rule 412(b), the party must" file a motion 14 days before trial that describes the evidence and the purpose for which it is offered. FRE 412(c)(1).  "Before admitting evidence under this rule, the court must conduct an in camera hearing and give the victim and parties a right to attend and be heard." FRE 412(c)(2).  But the "rule recognizes that in some instances the circumstances that justify an application to introduce evidence otherwise barred by Rule 412 will not become apparent until trial." FRE 412, 1994 advisory committee notes.

Rule 412 applies in a Title VII action like this one in which the plaintiff alleges sexual harassment. FRE 412, 1994 advisory committee notes.  FRE 412(a)(1)'s reference to "other" sexual behavior "suggest[s] some flexibility in admitting evidence 'intrinsic' to the alleged sexual misconduct." FRE 412, 1994 advisory committee notes.  For example, in a sexual harassment case, "some evidence of the alleged victim's sexual behavior and/or predisposition in the workplace may perhaps be relevant," but "non-work place conduct will usually be irrelevant." *Id.*

On the morning of the seventh day of trial, Meza-Perez objected to the defense asking any questions about sexual abuse she suffered at the hands of her husband. ECF No. 407 at 6-7.

1    Meza-Perez's counsel stated that "[a]s long as they're not going to ask about that . . . because if

2    they're going to be asking about any sexual activity by her other than as it pertains to Mr.

3    Ceballes, they had to have filed the motion." *Id.* at 7.  The defense responded that they did not

4    intend to ask the next witness about Meza-Perez's husband.  They also argued that Meza-Perez

5    had testified about the abuse in her case-in-chief, so she introduced the concept to the trial and

6    the defendants did not have to file a motion in anticipation of what the plaintiff might do at trial.

7    *Id.* at 7-9.  I declined to resolve the issue based on the defense's representation that they were not

8    going to raise the issue, but I advised Meza-Perez's counsel that they may have opened the door.

9    *Id.* at 9-10.  The defense did not ask the next witness any questions that drew a Rule 412

10   objection.

11          However, later that same day, Meza-Perez called Ceballes to the stand as part of her case

12   in chief. *Id.* at 44.  During Ceballes' attorney's cross examination, Ceballes testified that about

13   two months into Meza-Perez's employment, Meza-Perez began flirting with him by smiling at

14   him and making comments. *Id.* at 70-71.  Ceballes testified that Meza-Perez "started talking

15   about her ex-boyfriends and ex-husband" and about "how she would give oral sex." *Id.* at 71.  At

16   that point, Meza-Perez's counsel objected on Rule 412 grounds. *Id.*  I overruled the objection

17   because the question and answer were "intricately involved with the issues here in this case," so

18   the rule did not apply. *Id.* at 71-72.  Ceballes' counsel then asked him whether Meza-Perez

19   talked about sex with him. *Id.* at 72.  Her counsel again objected. *Id.*  I ruled that because the

20   question sought testimony about her conduct that was intricately involved with the allegations in

21   the case, admissibility turned on whether the probative value substantially outweighed the

22   prejudice to any party and harm to the victim. *Id.*  I concluded that there was "significant

23   probative value" that substantially outweighed the danger of harm to Meza-Perez and the

1  evidence was not unfairly prejudicial to her. *Id.*  I noted that there had already been testimony

2  about her interaction with Ceballes and, in any event, it was intricately involved in the

3  allegations, so I overruled the objection. *Id.* at 72-73.

4       Ceballes testified that Meza-Perez discussed in front of him that she enjoyed giving oral

5  sex to previous partners. *Id.* at 73.  He then described other sexualized comments between the

6  two of them that did not involve reference to her other sexual partners. *Id.* at 74.  He also

7  testified that after Meza-Perez rubbed his shoulder at work one day, he decided he would try to

8  initiate sex with her. *Id.* at 76-78.  He described their first sexual encounter that took place in the

9  workplace, which he described as consensual. *Id.* at 86.

10       Allowing the questions and answers was not an abuse of discretion.  First, the evidence

11  was not offered to prove that Meza-Perez engaged in other sexual behavior or to prove her sexual

12  predisposition.  It did not matter whether Meza-Perez in fact engaged in oral sex with prior

13  partners or enjoyed doing so.  Rather, the evidence was introduced to show the progression of the

14  interactions between Ceballes and Meza-Perez to explain why, along with other interactions

15  between them, Ceballes perceived that Meza-Perez would welcome a sexual proposition from

16  him.  The defendants therefore did not need to file a pretrial Rule 412 motion.

17       Further, these conversations took place in the workplace during work hours, as did their

18  subsequent sexual encounters.  Whether the sexual contact was welcome was a pivotal issue at

19  trial.  Consequently, Meza-Perez's own sexualized workplace comments (if the jury believed

20  Ceballes) were highly probative, not unfairly prejudicial, and did not harm her in the manner

21  contemplated by Rule 412. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 69 (1986)

22  (stating that "a complainant's sexually provocative speech or dress" is "obviously relevant" in a

23  sexual harassment case).

1    Finally, even if it was error to allow the testimony, Meza-Perez was not substantially

2    prejudiced.  It is more probable than not that the jury would have reached the same verdict even

3    if this isolated comment over the course of a ten-day trial had been excluded.  That is particularly

4    so because right after Ceballes testified about the oral sex comment, he described sexualized

5    comments between himself and Meza-Perez that did not refer to other sexual partners that, if

6    believed, suggested that she welcomed sexual contact with him.  I therefore deny this portion of

7    the motion.

8                                      *b. Immigration File and Audio Clip*

9    Meza-Perez argues that I should have precluded reference to her immigration file because

10   the defendants used that information to accuse her of lying to the immigration court.  She

11   contends that is an accusation of a crime for which she has never been charged or convicted, so it

12   should have been excluded under FRE 609.  She also contends there is no basis for the

13   accusation that she made up her allegations against Ceballes to get a T or U visa because she

14   never applied for either type of visa, the immigration court could not grant that relief, she

15   complained about Ceballes before she was in detention where she supposedly learned about this

16   possibility, and Ceballes admitted they had sex.  She also contends that the defendants

17   improperly obtained an audio clip from an immigration court proceeding and did not disclose it

18   during discovery, that I erroneously referred to it as being from Justice Court, and that defense

19   counsel essentially testified that it was the voice of Meza-Perez's counsel, Hardeep Sull, on the

20   recording.

21   Sbarro responds that this issue was previously litigated.  It also contends it does not know

22   why Meza-Perez is characterizing the audio tape as being improperly obtained because Sbarro

23   received it through a Freedom of Information Act (FOIA) request.  Sbarro asserts that my

1  decision to allow the evidence likely did not turn on a distinction between justice court or

2  immigration court and Meza-Perez could have corrected the discrepancy if she thought it was

3  important.  Finally, Sbarro argues that "[e]veryone in the courtroom . . . recognized and knew"

4  the recording was of Sull's voice and Sull admitted it was hers during a colloquy outside the

5  jury's presence. ECF No. 444 at 8.

6        I previously ruled on the admissibility of the immigration file, and I decline to reconsider

7  those rulings. ECF Nos. 320 at 55-56; 377 at 5-6.  FRE 609 does not apply because, as Meza-

8  Perez points out, neither she nor her counsel were convicted of a crime in relation to her

9  immigration proceedings. FRE 609(a) ("The following rules apply to attacking a witness's

10 character for truthfulness by evidence of a criminal conviction . . . .").

11       Meza-Perez does not explain why she believes the defendants obtained the audio clip

12 through improper means, and she does not refute their representation that they received it via a

13 FOIA request.  To the contrary, Meza-Perez's counsel stated at trial that a FOIA request was

14 how the defense obtained the tape. ECF No. 427 at 10-12.  She argues it was not produced in

15 discovery, but she did not object on that basis at trial. *See* ECF No. 425 at 51-52.  She attaches

16 no significance to my misstatement that the recording was from justice court, and she made no

17 effort to correct it at the time. *Id.*

18       Finally, Meza-Perez is correct that defense counsel essentially testified that it was Sull's

19 voice on the recording. *Id.*; *see also* ECF No. 414 at 49.  But Meza-Perez did not object to that

20 representation by counsel.  Had she done so, the defense may have been able to authenticate her

21 voice, and there is no factual dispute that it is Sull's voice.  I therefore deny this portion of her

22 motion.

23 / / / /

*c.  Life Care Expert*

Meza-Perez argues that I erred by excluding her life care expert, Lora White.  Sbarro responds that this issue was previously addressed through a motion in limine.  I decline to reconsider my prior rulings on this issue. *See* ECF Nos. 320 at 43-44; 328; 342; 345 at 24-28. Further, Meza-Perez was not substantially prejudiced because the jury found against her, so damages became irrelevant.

2.  Mistrial Motion

Meza-Perez contends that I should have granted her motion for a mistrial following defense counsel's opening statement because counsel accused her counsel of immigration fraud. She also contends that the issue permeated the trial through the continued reference throughout the trial to the T and U visas.

Sbarro responds that its opening statement contained factually correct assertions that were supported by the evidence at trial.  And it argues that I cautioned it not to directly accuse Sull of engaging in fraud and that it thereafter did not do so.  It also contends that I offered to give a curative instruction, but Meza-Perez declined.  Finally, Sbarro contends that any misconduct it engaged in during opening statement did not permeate the trial.

"To warrant reversal on grounds of attorney misconduct, the flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984) (quotation omitted).  Factors to consider include the frequency and timing of the misconduct, whether the party seeking a mistrial objected, whether the jury awarded outsized damages, and whether the district court gave a limiting instruction. *See id.* at 1285-86.

During Sbarro's opening statement, defense counsel stated the following:

> [P]laintiff and her attorneys led by her immigration attorney, Hardeep Sull, who's
> sitting at counsel's table, decided to engage in a scorched earth smear campaign.
> That smear campaign of false allegations consisted of a relentless character
> assassination against [and] intimidation of Sbarro and Dana [Dorado] and
> especially Dana. . . .  This (indicating) is a publicly filed document filed by Ms.
> Sull [in which] counsel and plaintiff alleged that Dorado allowed these rapes,
> sexual assaults, and groping of Sandra to continue. . . .  It's now clear, a hundred
> percent clear -- plaintiff and her lawyers will admit it at some point -- that these
> public accusations were 100 percent false, demonstratively false.

ECF No. 391 at 100.  Counsel also stated that "plaintiff and her immigration attorney" made

false allegations in this case to commit "immigration fraud" and game the system. *Id*. at 101-02.

And he stated that "plaintiff's immigration attorney led the charge against Sbarro and Dana by

falsely accusing them of facilitating rape and modern day slavery," and that "plaintiff and her

immigration attorney were throwing every possible argument against the wall to see what sticks

in order to gain her immigration papers." *Id.* at 103.

After opening statements were completed, Meza-Perez objected to Sbarro accusing Sull

of committing fraud and telling the jury that Sull would admit the allegations were false. ECF

No. 390 at 5.  I agreed that "one of the big concerns is that [Sbarro's counsel] said that Ms. Sull

will admit these allegations are false as if she's going to take the stand." *Id.* at 10.  But I

reaffirmed my pretrial ruling that questioning Meza-Perez regarding her alleged motive and any

falsities in the immigration proceeding were not excluded. *Id.* at 11-12.  I denied the mistrial

motion without prejudice to the issue being re-raised. *Id.* at 14-16.

Meza-Perez thereafter filed a motion for a mistrial or to strike Sbarro's answer. ECF No.

392.  I again ruled that I was not revisiting the motion in limine ruling, but I was "more troubled

by the references to Ms. Sull and the attacks on Ms. Sull." ECF No. 396 at 8.  I advised defense

counsel that it was "improper to attack counsel and accuse her of colluding to commit fraud.  Ms.

Sull's actions are not at issue in this case.  The plaintiff's actions are at issue and the defendant's actions are at issue." *Id.*  I also advised defense counsel that it was improper to suggest that Sull would admit the allegations were false because Sbarro agreed she would not be a witness. *Id.* at 9.  I denied the motion for a mistrial and the request to enter default because those remedies are for situations where misconduct permeates the entire proceeding and at that point the parties had only completed opening statements, which are not evidence. *Id.*  I concluded that a few statements in Sbarro's opening were not enough to warrant a mistrial. *Id.*  I offered to give a curative instruction to the jury if Meza-Perez wanted one, but Meza-Perez did not request that one be given at that time. *Id.* at 9-10.  And I told defense counsel that they could not "make any further references about Ms. Sull participating in . . . improper or illegal activities" and could not attack counsel any further. *Id.* at 10-11.  I reminded defense counsel on day eight of the trial prior to their immigration expert testifying that attacks on counsel are improper and counsel could not accuse Sull of committing fraud. ECF No. 412 at 149-50.

Sull was mentioned at various points later in the trial in front of the jury, but defense counsel did not accuse her of fraud. *See, e.g.*, ECF Nos. 396 at 91, 110; 400 at 11-12, 56-57, 68-70; 405 at 23-24, 46, 97-98, 103, 109; 410 at 34, 154-56; 425 at 52-53, 91; 414 at 49-51, 59-60, 67, 71.  At one point, I precluded defense counsel from asking whether documents in the immigration proceeding were filed under penalty of perjury. ECF No. 414 at 67.

On the ninth day of trial, I again offered to give an instruction to the jury regarding Sull. *Id.* at 32-36.  Meza-Perez's counsel initially indicated that they wanted the instruction. *Id.* at 150. However, they later decided not to request it. ECF No. 444-11 at 2.  In closing arguments, Sbarro argued that Meza-Perez was motivated by a desire to change her immigration status. ECF No.

419 at 122-23.  But defense counsel did not assert that Sull was involved in immigration fraud.
*Id.*

Considering the ten-day trial as a whole, defense counsel's improper comments in opening did not so permeate the trial as to conclude the jury was influenced by passion and prejudice in reaching its verdict.  The improper comments were made only in the opening statement.  Although Sull was mentioned at points in the trial, the assertion that Sull engaged in immigration fraud was never repeated.  The jury found against Meza-Perez but there was ample other evidence for the jury to base their decision on besides the references to Sull.  And I twice offered to give an instruction to the jury, but Meza-Perez declined.  I therefore deny this portion of her motion.

### 3.  Spoliation

Meza-Perez argues that I erred by denying her requests for spoliation instructions because Sbarro did not preserve the walk-in cooler, the cooler door, photographs, and surveillance footage.  Sbarro responds that this portion of the motion should be denied for the reasons I gave in ruling on her pretrial motion in limine.

To the extent this is a motion to reconsider my pretrial ruling denying Meza-Perez's request for a spoliation instruction, I decline to reconsider.  *See* ECF No. 320 at 5-17.  I address the remainder of Meza-Perez's spoliation arguments below in relation to her motion for sanctions.

### 4.  Pretrial Order Regarding Counsel Being Sanctioned

Meza-Perez argues that the defendants violated my pretrial order precluding them from mentioning that Meza-Perez's counsel had previously been sanctioned in the case by referring to counsel by name, suggesting Sull would testify, and raising the topic of a report on the local

1  news.  Sbarro responds that Meza-Perez admits in her motion that Sbarro did not violate this

2  court order and the news report does not refer to sanctions nor was it presented to the jury.

3      Prior to trial, I excluded reference to the fact that plaintiff's lawyers were sanctioned in

4  this case. ECF No. 320 at 56-57.  Meza-Perez has not pointed to anywhere in the record where

5  Sbarro told the jury that counsel was sanctioned.  I therefore deny this portion of her motion.

6                      5.  Time Management of the Trial

7      Meza-Perez argues that she was prejudiced by my management of the trial because the

8  parties indicated that they needed 10-to-12 days for trial, but I limited them to 10.  She also

9  contends that I required her to commit to a certain amount of time for her rebuttal case before she

10  knew all the evidence the defendants would present in their case.  She asserts that I shortened the

11  trial time to 10 days "without real notice to the parties." ECF No. 435 at 17.

12      Sbarro responds that the parties estimated a 10-to-12-day trial, so holding the parties to

13  the low end of this estimate was not unreasonable.  Sbarro also contends that the trial was

14  heading into a three-day weekend, after which at least one juror would have been lost due to a

15  prior commitment.  Sbarro also contends that Meza-Perez testified for hours and had plenty of

16  time to tell her story, but her testimony was often rambling and non-responsive to the questions

17  posed to her.  Finally, it contends that the defendants were entitled to sufficient time to put on

18  their defense, including one defense for which Sbarro bore the burden of proof.

19      I have "broad authority to impose reasonable time limits" at trial to "prevent undue delay,

20  waste of time, or needless presentation of cumulative evidence." *Navellier v. Sletten*, 262 F.3d

21  923, 941 (9th Cir. 2001) (quotation omitted).  I thus "have discretion to expedite the completion

22  of trials," but I "must not adhere so rigidly to time limits as to sacrifice justice in the name of

23  efficiency." *Id.* (quotation omitted).

Contrary to Meza-Perez's suggestion that trial time was limited to 10 days "without real notice," I discussed scheduling with the parties on numerous occasions before and throughout the trial. *See, e.g.*, ECF Nos. 341; 377 at 19-24; 401 at 6-7, 23-24; 404 at 6-12; 425 at 98; 427 at 18. We discussed getting the case to the jury on Thursday or Friday of the second week so that we would not risk losing jurors over the long holiday weekend and to prior commitments jurors had the following week. *See, e.g.*, ECF Nos. 404 at 6-12; 414 at 131-34, 188-89. Meza-Perez had more than enough time to tell her story. Indeed, she often wasted time by not responding to the questions asked of her. *See, e.g.*, ECF Nos. 396 at 18-19, 62-63; 397 at 23, 49, 54-55, 58, 87, 116, 118, 126. Moreover, Meza-Perez does not identify what evidence she was not able to put on that would have changed the case or enabled her to tell her story more fully or coherently. I therefore deny this portion of her motion.

### 6.  Weight of the Evidence

Meza-Perez contends that once the above errors are factored in, the jury's verdict is against the weight of the evidence. Sbarro responds that the trial turned on whether the jury believed Meza-Perez or Ceballes, so the jury's verdict is not against the weight of the evidence.

In determining whether to grant a new trial based on an argument that the verdict is against the clear weight of the evidence, I "can weigh the evidence and assess the credibility of witnesses, and [I] need not view the evidence from the perspective most favorable to the prevailing party." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). To grant a new trial, I must, after giving "full respect to the jury's findings," have the "definite and firm conviction that a mistake has been committed" based on the "entire evidence." *Id.* at 1371-72 (quotation omitted).

1    The verdict is not clearly against the weight of the evidence.  The trial was essentially a

2    credibility contest between Meza-Perez on the one hand, and multiple witnesses on the other.

3    Although Ceballes was an established liar (having initially denied any sexual contact with Meza-

4    Perez and later admitting they had sex), Meza-Perez was impeached on various topics as well.

5    The best that can be said for Meza-Perez is that it is a toss-up between her version and the other

6    employees' versions.  That is not enough to show the verdict is clearly against the weight of the

7    evidence.  I therefore deny her motion on this basis.

8        **C.  Motion for Judgment as a Matter of Law (ECF No. 436)**

9        At the conclusion of the presentation of evidence, Meza-Perez moved for judgment as a

10   matter of law under Rule 50(a) on three issues: (1) constructive discharge; (2)  reconsideration of

11   the statute of limitations issue on her state law claims against Sbarro; and (3) spoliation. ECF No.

12   419 at 18-19.  Meza-Perez now moves under Rule 50(b) on the issues of constructive discharge

13   and the statute of limitations.  As discussed above, I decline to reconsider the statute of

14   limitations issue, so I deny that portion of this motion.[1]  I also deny the motion regarding

15   constructive discharge.  The case turned on credibility, which lies "within the jury's

16   prerogative." *Harper v. City of L.A.*, 533 F.3d 1010, 1024 (9th Cir. 2008).  The evidence does not

17   compel the conclusion that Meza-Perez was constructively discharged. *See id.* at 1022-23.

18   / / / /

19   / / / /

20   / / / /

21

22   [1] Given the jury's finding of no assault, battery, false imprisonment, sexual harassment, or
     hostile work environment, it seems unlikely Meza-Perez would have prevailed on any such claim
     in front of this jury even if the matter had been submitted.  Even if the jury concluded that Sbarro
23   was negligent, the jury likely would not have found Meza-Perez was harmed as a result because
     the jury apparently rejected her version of events.

16

1   **D. Motions for New Trial, Judgment as a Matter of Law, Relief from Judgment,**
2   **and Sanctions (ECF Nos. 437-440)**

3       Meza-Perez moves to strike the defendants' answers because they destroyed (1) the walk-

4   in cooler, its door, and the latching or locking mechanism on the door; (2) photos taken by David

5   Axelrod in May 2017 and during the September 2017 site inspection; (3) surveillance footage or

6   a DVR hard drive where the footage would have been stored; and (4) employment records for

7   Meza-Perez and Ceballes.  She also contends that the defendants withheld evidence during

8   discovery, including an email from Dana Dorado to Meza-Perez, photos from the EEOC's file

9   that Sbarro obtained through a FOIA request, and a demonstrative picture of a cooler doorknob.

10  She brings these motions under Rules 50(b), 59(a), and 60(b)(1), (3), and (6).

11      Sbarro responds that I ruled on the walk-in cooler and door before and during trial.

12  Additionally, Sbarro notes that Nevada Equal Rights Commission (NERC) investigator Darrell

13  Harris visited the store before it was closed and saw no lock on the door.  Sbarro contends that

14  Axelrod took pictures during the May 2017 site visit (which were produced), but he did not take

15  pictures in September 2017 (so there was nothing to produce).  Sbarro argues that the evidence at

16  trial showed that the surveillance cameras did not work and by the time Meza-Perez reported her

17  allegations, any data would have been overwritten anyway.  Next, Sbarro argues that there is no

18  evidence that it destroyed employment files.  As for the email from Dorado, Sbarro contends the

19  email was not admitted at trial, and because the email was sent to Meza-Perez, she should have

20  produced it as well.  Sbarro asserts that it produced everything it received from the Equal

21  Employment Opportunity Commission (EEOC) in response to its FOIA request and Meza-Perez

22  also subpoenaed the file.  Sbarro contends that if any photos are missing, that is the fault of the

23  EEOC or NERC, not Sbarro.  As for the cooler doorknob photo, Sbarro asserts that the exhibit

was demonstrative and for impeachment, so it did not have to disclose the picture during

discovery.  Additionally, Sbarro notes that I did not allow the exhibit to go back to the jury as

evidence, and I gave a limiting instruction.  In his joinder, Ceballes asserts there is no evidence

that he destroyed any evidence. ECF No. 447.

As an initial matter, Meza-Perez does not argue or point to evidence from which I could

conclude that Ceballes spoliated or withheld any of the identified evidence.  I therefore deny the

motion as to Ceballes.  As for Sbarro, I address the allegations of spoliation and withholding

evidence below.

### 1.  Spoliation

"Spoliation is the destruction or significant alteration of evidence, or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

*In re Nat'l Consumer Mtg., LLC*, No. 2:10-cv-00930-PMP-PAL, 2011 WL 1300540, at *8 (D.

Nev. Mar. 31, 2011).  I have inherent power to sanction a party for spoliation of evidence.

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992).

A party spoliates evidence "only if [it] had some notice that the [evidence was]

potentially relevant to the litigation before [it was] destroyed." *United States v. Kitsap*

*Physicians Serv.*, 314 F. 3d 995, 1001 (9th Cir. 2002) (quotation omitted).  "The duty to preserve

arises not only during litigation, but also extends to the period before litigation when a party

should reasonably know that evidence may be relevant to anticipated litigation." *In re Nat'l*

*Consumer Mtg., LLC*, 2011 WL 1300540, at *8.  However, a "party does not engage in

spoliation when, without notice of the evidence's potential relevance, it destroys the evidence

according to its policy or in the normal course of its business." *United States v. $40,955.00 in*

*U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009).  The party seeking sanctions bears the burden

of establishing spoliation by showing (1) relevant evidence existed, (2) the spoliating party destroyed or lost the evidence, and (3) the spoliating party had notice that the evidence was potentially relevant to the litigation before it was lost or destroyed. *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015); *Putscher v. Smith's Food & Drug Centers, Inc.*, No. 2:13-CV-1509-GMN-VCF, 2014 WL 2835315, at *6 (D. Nev. June 20, 2014).

If I find spoliation, sanctions may include, among other things, dismissal, excluding evidence, or giving a rebuttable presumption or adverse inference instruction. *See Unigard*, 982 F.2d at 368-69; *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380-81 (9th Cir. 1988). In choosing among sanctions, if any, I consider whether the destruction was inadvertent or willful; whether other evidence exists to establish the non-offending party's case; the effectiveness of various sanctions given the circumstances; the relationship between the misconduct and the matters in dispute in the action; and prejudice to the other party, including whether the other party had an opportunity to inspect the evidence prior to its destruction. *See Unigard*, 982 F.2d at 369; *Halaco Eng'g Co.*, 843 F.2d at 380-82. I "should choose the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the other party." *Harfouche v. Stars On Tour, Inc.*, No. 2:13-cv-00615-LDG-NJK, 2016 WL 54203, at *3 (D. Nev. Jan. 5, 2016).

I must find "willfulness, fault, or bad faith" for dismissal to be a proper sanction. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quotation omitted). Destruction of evidence is willful "if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed." *Id.* at 959 (simplified). "Before imposing the harsh sanction of dismissal," I consider: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking

1  sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the

2  availability of less drastic sanctions." *Id.* at 958 (simplified).  The prejudice inquiry in this

3  context "looks to whether the spoiling party's actions impaired the non-spoiling party's ability to

4  go to trial or threatened to interfere with the rightful decision of the case." *Id.* at 959 (simplified).

5                                *a.  Walk-In Cooler*

6         I deny the motion as it relates to the walk-in cooler for the reasons I stated at trial. ECF

7  No. 414 at 158-77.

8                    *b.  Axelrod Photos Taken in May 2017 and September 2017*

9         Meza-Perez argues that Malani Kotchka testified at her deposition that Axelrod took

10  pictures during Sbarro's internal investigation in May 2017, and only the best photos were given

11  to NERC.  She contends that all photos should have been preserved.  She also asserts that Harris

12  testified at trial that Axelrod took photos during the September 2017 site inspection, but those

13  photos were not turned over to her.

14        Sbarro responds that Axelrod testified that he took pictures during the May 2017

15  investigation, that he did not take pictures in September 2017 during the NERC site visit, and

16  that the pictures he took in May 2017 were produced in discovery.  Sbarro contends that to the

17  extent Meza-Perez believes otherwise, she could have questioned Axelrod about this but did not.

18        I have been given no evidence to support Meza-Perez's assertion that Axelrod deleted

19  photos from May 2017 other than counsel's email stating that is what Kotchka stated at her

20  deposition. *See* ECF No. 440-1.  Further, Meza-Perez does not explain why, if she knew about

21  this during discovery, she raises it now for the first time. *See, e.g.*, *Badger v. Wal-Mart Stores,

22  Inc.*, No. 2:11-CV-1609-KJD-CWH, 2013 WL 3297084, at *8 (D. Nev. June 28, 2013) (holding

23  that discovery was the time to address spoliation).  Meza-Perez does not explain why she

believes any photos taken in May 2017 that were not provided would show something different

from the ones that were provided, or what they might show.  Further, it does not appear from

what little information I have that any destruction was willful.  Rather, the characterization was

that Axelrod provided the best pictures to NERC and deleted the rest.  Considering all these

factors, even if the pictures existed, Axelrod knew the pictures were relevant, and he

nevertheless destroyed them, I find no sanction appropriate in these circumstances.

Meza-Perez does not cite to where in the record Harris testified that Axelrod took

pictures in September 2017.  She therefore does not meet her burden of showing that relevant

evidence existed or that Sbarro lost or destroyed it.  At any rate, she does not explain how the

photos, if they ever existed, would show anything different than the May 2017 photos.  Harris,

who was a neutral witness as a NERC investigator, testified that there was no lock on the cooler

door when he conducted the September 2017 site visit. ECF Nos. 401 at 73-75, 100; 400 at 81-

83.  I therefore deny this portion of her motion.

### c. Surveillance Footage or Hard Drive

Meza-Perez asserts that Sbarro destroyed the surveillance footage and/or hard drive on

which such footage was recorded.  She contends that Sbarro's counsel represented that it had no

access to surveillance footage because the camera system belonged to the Monte Carlo casino in

which the Sbarro store was located, but that is contrary to the evidence presented at trial that the

camera system was installed by Sbarro.

Sbarro responds that there was no spoliation because the cameras never worked and even

if they did, by the time Meza-Perez first reported the alleged misconduct, the DVR would have

automatically overwritten any footage.  Sbarro also contends that regardless of its representation

1   Sbarro had no control over the cameras and that they belonged to the Monte Carlo, Meza-Perez

2   could and should have explored the issue in discovery but did not.

3        Meza-Perez has not shown that Sbarro spoliated surveillance footage.  Rohan Shearer,

4   Sbarro's senior vice president and chief administrative officer, testified under oath that the

5   cameras did not work at the time Meza-Perez was employed at the Monte Carlo store, and even

6   if they had, the DVR would have overwritten any footage by the time Meza-Perez complained

7   about the alleged harassment. ECF No. 412 at 41-45, 102, 133.

8        Meza-Perez has shown, however, that the DVR itself existed, that Sbarro destroyed or

9   lost it, and that Sbarro had notice that the evidence was potentially relevant to the litigation

10   before it was lost or destroyed.  Sbarro knew before the Monte Carlo location was abandoned

11   that Meza-Perez alleged she was sexually harassed in the store (not just in the cooler) and that

12   she had an attorney representing her. *See, e.g.*, ECF Nos. 235-2 at 3, 5; 412 at 44.  I nevertheless

13   decline to issue sanctions because even if the DVR had been preserved, the evidence shows the

14   camera was not functioning during the relevant time period.

15        I find it troubling that Sbarro has not refuted Meza-Perez's version of events regarding

16   this evidence.  It is undisputed that Sbarro's counsel told Meza-Perez's counsel on February 19,

17   2020 that Sbarro had no duty to preserve the surveillance footage or DVR because they belonged

18   to the Monte Carlo, not Sbarro. ECF No. 440-2 at 3.  Sbarro represents that this was the

19   information known to counsel at the time. ECF No. 443 at 11.  But what Sbarro's lawyers do not

20   explain is when they learned otherwise and when they corrected this representation.  While

21   Meza-Perez could have pursued information about the cameras in discovery and apparently did

22   not, that does not relieve Sbarro's counsel from correcting an earlier representation that turned

23   out to be inaccurate.  If Meza-Perez learned that Sbarro owned the surveillance system for the

first time at trial during Shearer's testimony, Sbarro's counsel's failure to correct the earlier representation falls below the "high degree of professionalism" that I expect from attorneys appearing before this court. LR 1-1(c).  Nevertheless, because the cameras did not function, I decline to issue sanctions against either Sbarro or its counsel.

### d.  Employment Records for Meza-Perez and Ceballes

In her motion, Meza-Perez asserts that Sbarro destroyed employment records for her and Ceballes.  Sbarro responds that Meza-Perez cites to nothing in support and, in any event, the testimony at trial establishes there was no destruction of the employees' files.

Meza-Perez cites nothing to support her assertion that employee files were destroyed. The allegation was refuted by two witnesses under oath at trial. ECF Nos. 427 at 25-26; 410 at 95, 127, 158-59.  Moreover, documents from Meza-Perez's employment file were presented at trial. ECF No. 412 at 46-55.  Finally, she provides no explanation for what she thinks might be in the allegedly destroyed records that would have any bearing on this case.[2]  I deny this portion of her motion.

### 2.  Withheld Evidence

### a.  Dorado Email to Meza-Perez

Meza-Perez contends there was an email from Dorado to Meza-Perez that surfaced for the first time at trial.  Sbarro responds that Meza-Perez did not identify what email she was referring to, but it assumes the email at issue was the one that was not admitted into evidence. Sbarro also notes that the email was to Meza-Perez, so she should have had access to her own email, but she also did not produce it in discovery.

---

[2] Meza-Perez also asserts that her and Ceballes's employment records were withheld in discovery.  She cites nothing to support this assertion, nor does she explain why she is raising it for the first time in a post-trial motion.

During Dorado's testimony, Sbarro's counsel used an email purportedly between Dorado and Meza-Perez to refresh Dorado's recollection. ECF No. 410 at 151. Sbarro then tried to admit the exhibit into evidence, to which Meza-Perez objected. *Id.* at 159-60. I excluded the email as hearsay and as not being produced in discovery, so the jury did not see the email. ECF No. 412 at 5-8. There is no prejudice to Meza-Perez from Sbarro not producing an email that was sent to Meza-Perez, that was used solely to refresh a witness's recollection, and that was not presented to the jury. *See Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (among the factors to consider in determining a discovery sanction is prejudice to the other party). I therefore deny this portion of her motion.

### b. Photos from the EEOC's File

Meza-Perez contends that Sbarro did not produce photos that NERC investigator Harris took during the September 2017 site visit. Sbarro responds that Harris was mistaken in identifying certain pictures as ones he took. Sbarro also argues that it cannot be held responsible for NERC's failure to preserve and turn over pictures.

At trial, Harris identified pictures as ones he took during the September 2017 site inspection. ECF No. 401 at 74-75, 88. After Harris testified, Meza-Perez's counsel sent Sbarro's counsel an email requesting the rest of the photos Harris and Axelrod took in September 2017. ECF No. 440-1 at 4. In the parties' email exchange on this topic, Sbarro's counsel stated that the photos Harris identified as ones he took were actually taken by Axelrod in May, that the photos Harris took in September "were not produced to us/were not saved by him," that Harris testified at his deposition that he did not save or produce the photos he took in September 2017, and that Harris "misspoke at trial." *Id.* at 3-4.

To the extent Harris took photos that were not included in NERC's response to Sbarro's FOIA request, Meza-Perez does not explain how that is Sbarro's fault. Additionally, she does not explain how the photos would make a difference where Harris, who was a neutral witness, testified he saw no lock on the walk-in cooler door when he conducted the September 2017 site inspection. I deny this portion of her motion.

### c. Demonstrative Picture

Meza-Perez asserts that a demonstrative picture of a cooler doorknob was not produced by the deadline the parties agreed to for the exchange of demonstrative exhibits and it was not shown to counsel before it was used at trial. Sbarro responds that the picture was demonstrative only, that I gave a limiting instruction explaining that to the jury, Sbarro does not know what deadline Meza-Perez is referring to, the picture was for impeachment and therefore did not have to be disclosed, and because it was demonstrative, it did not go to the jury room as evidence.

The demonstrative exhibit at issue was a picture of a push button doorknob that Sbarro showed to witness Alda Cadacio. ECF No. 412 at 26-29, 36-37, 93-96. The picture was used to impeach Cadacio's testimony that she thought there was a lock on the inside of the walk-in cooler. *Id.* I gave a limiting instruction and ruled that the picture would not go back to the jury room. *Id.* at 96-98; ECF No. 419 at 26-27.

Meza-Perez does not identify when the parties agreed to a deadline for exchanging demonstrative exhibits or what that deadline was. She does not cite any authority for the proposition that a demonstrative exhibit used for impeachment must be disclosed in discovery. "By its terms, rule 26(a)(3) does not require disclosure of evidence to be used solely for impeachment purposes." Fed. R. Civ. P. 26, 1993 advisory committee notes; *see also Isaac v. Forcillo*, No. 2:19-cv-01452-KJD-BNW, 2022 WL 1125369, at *10 (D. Nev. Apr. 14, 2022)

(holding that a demonstrative animated video "depicting what [the plaintiffs] believe occurred on the day of the accident" was "not subject to pretrial disclosure"); Fed. R. Civ. P. 26(a)(1)(A) (excluding from initial disclosures materials that would be used "solely for impeachment").  I therefore deny this portion of her motion.

**III.  SBARRO'S MOTION (ECF No. 433)**

Sbarro filed a renewed Rule 50(b) motion, arguing that Meza-Perez's Title VII claims are untimely.  Meza-Perez did not respond to Sbarro's renewed motion.  I need not address Sbarro's Rule 50(b) motion because the jury returned a verdict in Sbarro's favor and I deny Meza-Perez's motions.  I therefore deny it as moot.

**IV.  CONCLUSION**

I THEREFORE ORDER that plaintiff Sandra Meza-Perez's post-trial motions **(ECF Nos. 434-40) are DENIED**.

I FURTHER ORDER that defendants Sbarro LLC and Sbarro, Inc.'s renewed motion for judgment as a matter of law **(ECF No. 433) is DENIED as moot**.

DATED this 6th day of April, 2023.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE